UNITED STATES of America, Plaintiff–Appellee,

v.

Lamont B. NELSON and Delano C. Nelson, Defendants–Appellants.

Nos. 93–2040, 93–2066.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 6, 1994.

Decided Oct. 27, 1994.

Christina McKee, Asst. U.S. Atty., Donna Eide (argued), Office of the U.S. Atty., Indianapolis, IN, for U.S.

Richard D. Gilroy, Indianapolis, IN, for Lamont B. Nelson.

Michael J. Donahoe (argued), Epstein & Frisch, Indianapolis, IN, for Delano C. Nelson.

Before CUDAHY, COFFEY, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Two brothers, Lamont B. Nelson ("L. Nelson") and Delano C. Nelson ("D. Nelson"), committed various federal offenses related to the armed robbery of an Indianapolis jewelry store. D. Nelson was sentenced to 230 months imprisonment; L. Nelson was sentenced to 200 months imprisonment. The Nelsons did not actually rob the store: they recruited three young men to commit the robbery. The brothers gave the actual robbers guns, helped them steal a getaway car, and instructed them how to carry out the robbery. From the approximately $500,000 in goods taken, the actual robbers each received a watch taken in the robbery and a couple hundred dollars. L. Nelson took a large diamond valued at $117,000. D. Nelson and two additional accomplices, Gregory Brown and Darry Herrington, took most of the rest of the jewelry.

All those involved in the robbery—except the Nelsons—pleaded guilty. At trial several people with knowledge of the crime testified against the Nelsons. The testimony of three of those witnesses is at issue in this appeal: (1) Darry Herrington, who had helped plan the robbery; (2) Virgil Terrell Douglas, an acquaintance who had seen the Nelsons acquire guns for the robbery; and (3) Viveca Traylor, who had been involved in the conspiracy to rob the jewelry store, and who was a friend and sometime girlfriend of D. Nelson. All three witnesses gave extensive damaging testimony against the Nelsons.

During trial, the district court limited the defense's cross-examination of Herrington, Douglas, and Traylor in two areas. The court prevented defense counsel from asking Herrington and Traylor what penalties they might have faced without plea-bargains. The court also prevented defense counsel from asking Herrington and Douglas about other robberies in which they were supposedly involved.[1]

During cross-examination defense counsel impeached the credibility and motives of all three witnesses. They all had criminal pasts, which the jury heard about in detail. Both Herrington and Traylor testified under plea-bargains with the government. Douglas testified under a grant of immunity, under which the government agreed not to use his testimony against him in a federal prosecution. The jury heard about the existence of all these plea-bargains and about what the witnesses were to receive from the bargains.

A jury convicted both Nelsons of all the crimes with which they were charged. In sentencing D. Nelson, the district court added a two-level enhancement for obstructing justice, based on evidence that he had threatened witnesses before the trial.

The Nelsons now argue that the trial judge should not have limited cross-examination of Herrington, Douglas, and Traylor. D. Nelson also argues that the trial judge should not have enhanced his sentence for obstructing justice. We affirm the convictions and sentence.

## ANALYSIS

### 1. Cross-Examination

The Nelsons argue that the district court erred in limiting their cross-examina-

---

1. The government made motions *in limine* to prohibit cross-examination regarding these robberies. D. Nelson properly objected to both of the government's motions. L. Nelson, however, did not object to the government's motion regarding Herrington's testimony; instead he made an identical motion, agreeing with the government that the evidence should be excluded. Therefore, absent plain error, L. Nelson has waived his right to appeal the trial court's decision about Herrington's testimony. *United States v. Maholias*, 985 F.2d 869, 877 (7th Cir.1993). But this distinction ultimately changes nothing in our decision, because we decide that no contention of either brother has any merit.

tions. Their first major argument is that the district court violated their Sixth Amendment rights of confrontation when it refused to allow them to cross-examine Herrington and Traylor about the penalties they faced without their plea-bargains. The Nelsons argue that they needed to bring out those possible penalties to show that Herrington and Traylor were motivated to testify falsely.

■ While the Sixth Amendment guarantees a defendant the right to cross-examine witnesses, it allows a trial judge to place reasonable limits on the cross-examination. *United States v. Saunders,* 973 F.2d 1354, 1358 (7th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1026, 122 L.Ed.2d 171 (1993). "Trial judges have broad discretion 'to impose reasonable limits on such cross-examination based on concerns about ... harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant.'" *United States v. Cameron,* 814 F.2d 403, 406 (7th Cir.1987) (quoting *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986)).

■ In general, we review a trial judge's limitations on the extent of cross-examination for an abuse of discretion. *United States v. Neely,* 980 F.2d 1074, 1080 (7th Cir.1992). However, where limitations directly implicate the Sixth Amendment right of confrontation, we review the limitation *de novo. Id.* Thus, when deciding whether limitations of cross-examination are permissible, "'courts have striven to distinguish between the core values of the confrontation right and more peripheral concerns which remain within the ambit of the trial judge's discretion.'" *Saunders,* 973 F.2d at 1358 (quoting *Dorsey v. Parke,* 872 F.2d 163, 166 (6th Cir.), *cert. denied,* 493 U.S. 831, 110 S.Ct. 103, 107 L.Ed.2d 67 (1989)).

The Nelsons argue that the district court's limitations of their cross-examinations of Herrington and Traylor infringed their core Sixth Amendment rights. The brothers argue in vain. Those limitations on cross-examination did not deny the defendants the opportunity to *establish* that the witnesses may have had a motive to lie; rather, the limitations denied them the opportunity to

*add extra detail* to that motive. "'[T]he exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.'" *Van Arsdall,* 475 U.S. at 678–79, 106 S.Ct. at 1435 (quoting *Davis v. Alaska,* 415 U.S. 308, 316–17, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974)). But once this core function is satisfied by allowing cross-examination to expose a motive to lie, it is of peripheral concern to the Sixth Amendment how much opportunity defense counsel gets to hammer that point home to the jury. The trial court may preclude "cumulative and confusing cross-examination into areas already sufficiently explored to permit the defense to argue personal bias and testimonial unreliability." *United States v. Robinson,* 832 F.2d 366, 373 (7th Cir.1987), *cert. denied,* 486 U.S. 1010, 108 S.Ct. 1739, 100 L.Ed.2d 203 (1988). Therefore, because the district court's limitations did not implicate the defendants' core Sixth Amendment rights, we review the district court's decision to limit cross-examination regarding penalties for an abuse of discretion. *Saunders,* 973 F.2d at 1358–59.

■ The jury heard evidence exposing Herrington's and Traylor's motive to lie. They heard exhaustive detail about Herrington's and Traylor's plea-bargains. The jury knew those plea bargains could have moved the witnesses to lie, to please the government so they might spend less time in prison. The extensive testimony the jury heard was more than adequate. "'[W]hen reviewing the adequacy of a cross-examination, the question is whether the jury had sufficient information to make a discriminating appraisal of the witness's motives and bias.'" *United States ex rel. Ashford v. Director, Ill. Dept. of Corr.,* 871 F.2d 680, 683 (7th Cir.1989) (quoting *United States v. De Gudino,* 722 F.2d 1351, 1354 (7th Cir.1983)). Here the jury had far more than enough information to make that "discriminating appraisal." The testimony excluded by the trial court would have added very little to the information the jury already had. We find that the district court did not abuse its discretion when it limited cross-examination.

Several years ago we addressed and answered a question essentially identical to the question we decide today. In *United States v. Fitzgerald,* 579 F.2d 1014 (7th Cir.), *cert. denied,* 439 U.S. 1002, 99 S.Ct. 611, 58 L.Ed.2d 677 (1978), several people together had fraudulently fixed a bid for a municipal sewer project, bribing a city official and evading taxes in the process. After the scheme was exposed, one participant testified against the others under a grant of immunity. During trial, defense counsel asked the immunized witness four questions designed to bring out the penalties he would have faced without the immunity agreement. The government promptly objected to each question, and the trial judge sustained the government's objections. On appeal the defendants claimed the judge erred by limiting cross-examination. We analyzed that appeal as we have analyzed the Nelsons' appeal, and we rejected it, stating that "[t]he jury had ample information on [the witness'] receipt of immunity and the benefits he derived from immunity. The court did not abuse its discretion when it sustained objections to these four questions." *Fitzgerald,* 579 F.2d at 1021.

The Nelsons' contention is indistinguishable from our decision in *Fitzgerald.* Grants of immunity from prosecution and plea bargains are both deals with the government under which the witness testifies on behalf of the government and gets benefits in return. Both immunity grants and plea bargains potentially give witnesses motives to testify falsely. In *Fitzgerald,* as here, the jury was made well aware of the witness' bargain and was able to evaluate its impact on the witness' credibility. Beyond that, it is within the discretion of the trial court to limit peripheral testimony about the bargains.

Furthermore, we note that the Ninth Circuit a few years ago reached the same conclusion on the question we face today. In *United States v. Dadanian,* 818 F.2d 1443 (9th Cir.1987), *modified on other grounds after reh'g,* 856 F.2d 1391 (9th Cir.1988), the trial judge had refused to allow cross-examination of a witness about his "maximum jail time exposure," apparently the jail time he might have served without a plea-bargain.

The Ninth Circuit rejected the defendants' claim that this limitation violated their Sixth Amendment rights, noting that it was "at best marginally relevant" and that there was "more than an adequate opportunity to expose [the witness'] potential bias and motive in testifying." *Id.,* 818 F.2d at 1449.

■ The Nelsons make an argument tied to their first argument about the motives of witnesses to lie. They say that the district court improperly excluded cross-examination concerning other robberies Herrington and Douglas supposedly committed. The Nelsons admit that Herrington and Douglas had no bargains with the government regarding those robberies that might have motivated the witness to lie. Instead, they speculate that there was an implicit, unspoken bargain: the authorities ignored those crimes in return for Herrington's and Douglas' testimony against the Nelsons. They argue that evidence of other robberies would have shown that the witnesses might have had an additional motive to lie.

That argument falls flat. Evidence of other robberies would have been entirely peripheral to the defendants' rights to confront witnesses. The jury knew all about Herrington's real plea-bargain and about Douglas' receipt of use immunity. Additional cross-examination on this topic would not have established a potential motive to lie but merely would have embellished facts already showing that motive. *Robinson,* 832 F.2d at 373. This sort of repetitive, profitless cross-examination is exactly that type of peripheral examination which falls within the trial court's discretion to limit. *Van Arsdall,* 475 U.S. at 679, 106 S.Ct. at 1435. The district court did not abuse its discretion.

■ The Nelsons' second major argument is that they should have been allowed more opportunity to impeach Herrington's and Douglas' credibility, using evidence that they committed other armed robberies. We reject this argument as well. The general credibility of a witness is a matter collateral to the Sixth Amendment confrontation right. *Ashford,* 871 F.2d at 683. Therefore, the trial judge has discretion whether to admit evidence of prior "bad acts" to impeach a

witness' general credibility; we review his decision for abuse of that discretion. *Id.*

The Federal Rules of Evidence also provide that evidence of a witness' prior bad acts to impeach his credibility is largely a matter for the discretion of the trial court:

> Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility ... may not be proved by extrinsic evidence. They may, however, *in the discretion of the court,* if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning the witness' character for truthfulness or untruthfulness....

Fed.R.Evid. 608(b) (emphasis added). The trial judge explicitly exercised his discretion under 608(b).[2]

The Nelsons overlook that Herrington's and Douglas' credibility was already severely damaged by testimony the district court did allow. Herrington admitted that he had been a conspirator in the Indianapolis robbery, that he had lied to police earlier about his involvement in the robbery, and that he had been a drug dealer. Douglas, who was only 17 years old when he testified, admitted to lying repeatedly to the police and the FBI, that he had been convicted three times of vehicle theft, and that he had been carrying a handgun when arrested. Any additional information suggesting that Herrington and Douglas were hardly model citizens would at most have had a marginal impact on the jury's evaluation of their general credibility. Thus, the trial judge was again well within his discretion in his decision.

■■■ Even had the district court somehow erred in limiting the scope of cross-examination, the error was harmless. Harmless error analysis applies to errors arising under the Sixth Amendment confrontation clause. *Van Arsdall,* 475 U.S. at 684, 106 S.Ct. at 1438. "The correct inquiry is whether, assuming that the damaging potential of

the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt." *Id.* As we have already seen, the limitations placed on cross-examination by the district court in this case did not reduce the "damaging potential of the cross-examination." The motives and credibility of all three witnesses, Herrington, Douglas and Traylor, were brought into doubt by the extensive testimony the district court did allow. The jury chose to believe the witnesses, and, beyond a reasonable doubt, adding detail to the cross-examinations would not have changed that verdict.

### 2. D. Nelson's Sentence

■■■ We dispose quickly of D. Nelson's groundless claim that the district court erred in calculating his sentence. At sentencing, the district court heard testimony that D. Nelson had made several threats against the lives and families of witnesses. The court found that the government had shown by a preponderance of the evidence that D. Nelson had obstructed justice and therefore gave him a two-level enhancement of his sentence. D. Nelson now claims that the judge erred in basing his conclusion on hearsay testimony.

■■■ To use evidence during sentencing, the judge must only decide that the evidence is reliable and must allow the defendant opportunity to rebut. *United States v. Nowicki,* 870 F.2d 405, 407 (7th Cir.1989). We review for an abuse of discretion the district court's determination that the evidence was reliable. *United States v. Hubbard,* 929 F.2d 307, 310 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 206, 116 L.Ed.2d 165 (1991).

In *Nowicki,* we explicitly held that in sentencing a defendant the judge could permissibly rely on hearsay evidence of threats. 870 F.2d at 407. *See also Hubbard,* 929 F.2d at 309–10 (holding that admission of hearsay

---

**2.** We decline the government's invitation to address the further question of whether, under 608(b), acts of armed robbery are probative of a witness' truthfulness or untruthfulness. *See Varhol v. National R.R. Passenger Corp.,* 909 F.2d 1557, 1567 (7th Cir.1990) (en banc) (noting that

crimes such as stealing fall into a "gray area" for Rule 608(b) purposes). It is enough for present purposes that the trial judge possessed the discretion he exercised to limit the scope of cross-examination.

evidence at sentencing was entirely proper); *United States v. Escobar–Mejia,* 915 F.2d 1152, 1154 (7th Cir.1990) (noting that "[h]earsay is a staple in sentencing.").

D. Nelson was allowed to rebut the evidence that he had threatened witnesses who were to testify at his trial. He denied that he had made those threats; the judge, as was his prerogative, did not believe him. Nelson is not entitled to a belief in his rebuttal, just to the opportunity to present it.

The district court did not abuse its discretion when it determined that the evidence was reliable. There is no indication that the evidence of threats was false. *Escobar–Mejia,* 915 F.2d at 1154. Several independent sources verified that Nelson had threatened witnesses. The evidence plainly was adequately reliable, and Nelson got his chance to rebut. Therefore, we find no abuse of discretion in the district court's decision.

In sum, the Nelsons' appeal is without merit. Their convictions, and the sentence of D. Nelson, are AFFIRMED.