**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gerald JACKSON and Anthony n/k/a
Andre Rodriguez, Defendants–
Appellants.**

Nos. 94–1567 & 94–2817.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 20, 1995.

Decided March 27, 1995.

Cale J. Bradford, Larry Mackey (argued), Office of U.S. Atty., Indianapolis, IN, for plaintiff-appellee.

Gregory Bowes (argued), Indianapolis, IN, for defendant-appellant in No. 94–1567.

Robert J. Palmer, Chris Truax, law student (argued), May, Oberfell & Lorber, South Bend, IN, for defendant-appellant in No. 94–2817.

Before POSNER and FLAUM, Circuit Judges, and McDADE,* District Judge.

FLAUM, Circuit Judge.

A jury convicted Gerald Jackson and Anthony Rodriguez of possession with intent to distribute cocaine base (Count One), in violation of 21 U.S.C. § 841(a)(1), and using and carrying a firearm during and in relation to a drug trafficking crime (Count Two), in violation of 18 U.S.C. § 924(c)(1). The district court sentenced Jackson to 212 months imprisonment on Count One and 60 months imprisonment on Count Two, to run consecu-

---

* The Honorable Joe Billy McDade, of the United States District Court for the Central District of Illinois, sitting by designation.

tively, to be followed by a term of supervised release of five years on Count One and three years on Count Two. The court sentenced Rodriguez to 262 months imprisonment on Count One and imposed an identical sentence to Jackson in all other regards.

On appeal, Rodriguez and Jackson argue that their convictions should be reversed. First, both defendants maintain that the government's refusal to comply with Fed. R.Crim.P. 16(a)(1)(E) required the exclusion of expert witness testimony. Second, they assert that the trial court denied them the right to confront the witnesses against them by preventing them from questioning a witness about a past act of perjury. Third, they contend that the trial court erred in instructing the jury that a conviction under 18 U.S.C. § 924(c)(1) could be based on constructive possession. Jackson also argues that the district court erroneously failed to exclude certain exhibits whose prejudicial effect outweighed their relevance. Finally, Jackson contends that the evidence was insufficient to convict him on either count. We affirm.

## I.

During the evening of September 23, 1993, Indianapolis Police Department officers executed a search warrant at a basement apartment at 2216 North College Avenue. The officers entered the apartment, identified themselves as police, and ordered everyone in the apartment to "get down." Ignoring this command, Jackson walked backwards toward another area of the apartment and reached toward a pile of clothing that lay on the floor. The officers later found a loaded Taurus 9 millimeter handgun under that pile and another handgun nearby. Jackson testified that he was not reaching for a gun and that he lay on the ground when the officers ordered him to do so.

The officers found Rodriguez in a closed bathroom, to which he had attempted to block the officer's entry. After securing Rodriguez, one officer retrieved a loaded handgun from on the top of the toilet. During the subsequent search of the apartment, the officers seized: thirty three grams of cocaine, walkie-talkies, and a digital scale from a shelf in a kitchen cabinet; forty nine grams of cocaine base from a closet shelf in the first bedroom; twenty grams of cocaine in a leather pouch found on a closet shelf in the second bedroom; over one gram of cocaine in a jacket on the living room floor; digital pagers on both Jackson and Rodriguez; another pager from the living room floor; and $3,100 cash from Rodriguez and $699 cash from Jackson.

In addition to the cocaine, handguns, and drug paraphernalia, the officers discovered two Western Union receipts bearing Rodriguez's name in a duffel bag in the second bedroom. Following a reading of his *Miranda* warnings, Rodriguez gave his address to the officers as 2216 North College Avenue and told them that he paid a monthly rent of $500. Jackson claimed that he lived at a different address. The officers found a receipt in another duffle bag in the second bedroom from Southern California Edison Company with Jackson's name and a different address on it; Jackson testified that this receipt was found in his wallet. The officers also testified that they discovered sets of keys for the apartment on both Rodriguez and Jackson; Jackson denied that he had the keys. At trial the building landlord, Phillip O'Malley, testified that he rented the apartment to both Rodriguez and Jackson. During an interview immediately following the raid, however, the landlord had told police that he rented only to one man and received rent money only from Rodriguez and not from Jackson.

On December 15, 1993, a jury convicted Jackson and Rodriguez of possession with intent to deliver cocaine in violation of 21 U.S.C. § 841(a)(1), and of using or carrying a firearm during and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1). This appeal followed.

## II.

### A.

Jackson and Rodriguez first argue that the government's failure to comply with Fed. R.Crim.P. 16(a)(1)(E) required the exclusion of its proffered expert testimony regarding

the drug courier profile. Fed.R.Crim.P. 16(a)(1)(E) states:

> At the defendant's request, the government shall disclose to the defendant a written summary of testimony the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case in chief at trial. This summary must describe the witnesses' opinions, the bases and the reasons therefor, and the witnesses' qualifications.

The defendants contend that the government complied with neither the spirit nor the letter of the law, and that this violation permitted allegedly "surprise" testimony that substantially prejudiced their ability to prepare an adequate defense. On November 24, 1993, Jackson's counsel made a written request for disclosure of expert testimony pursuant to Fed.R.Crim.P. 16(a)(1)(E).[1] On November 29, 1993, the government responded in writing to this request, stating:

> In response to your letter of November 24, 1993, please be advised that Officers Paul G. Arkins, Jerry Cheung, and R.J. Kenney may testify at trial concerning the use of beepers, firearms, walkie-talkies, and Western Union wire transfers in connection with the sale of narcotics. In addition, each of these officers may testify that narcotics traffickers often secure locations such as houses or apartments to serve as a base for dealing narcotics. Each of these police officers will base their testimony on their years of training and experience in the area of drug investigations.

On December 3, 1993, Rodriguez filed his 16(a)(1)(E) request for a summary of the government's expert witness testimony. On December 7, 1993, the government's written response stated:

> In response to your Request for Written Summary of the Government's Proposed Expert Testimony dated December 3, 1993, please be advised that Officers Emmit C. Carney, Jerry Cheung, and R.J. Kenney may testify at trial concerning the use of beepers, firearms, walkie-talkies, and Western Union wire transfers in connection with the sale of narcotics. In addition, each of these officers may testify that narcotics traffickers often secure locations such as houses or apartments to serve as a base for dealing narcotics. Each of these police officers will base their testimony on their years of training and experience in the area of drug investigations.

After receiving these responses, which they considered inadequate, Jackson and Rodriguez filed motions in limine to prohibit the government from introducing the expert testimony. The district court denied these motions.

At trial, the government sought to introduce Officer R.J. Kenney to testify as to his opinion about what items drug dealing operations commonly use—the so-called "drug courier profile." Jackson and Rodriguez objected to this testimony, arguing that the government's disclosure and notice in advance of trial was inadequate under 16(a)(1)(E) and thus required exclusion of this testimony. Outside the presence of the jury, the government proffered the substance of Kenney's testimony to the court. The district court overruled the objection[2] and

---

1. The new Fed.R.Crim.P. 16(a)(1)(E) took effect on December 1, 1993, prior to the trial.

2. Specifically, the district court stated:

> [i]t's a pretty generic run-of-the-mill sort of testimony from the agent, and you [defendants] have full knowledge of the items that were seized, the full array of evidence that the Government was going to offer, at least there's been no suggestion to the contrary. It appears to me that the notice, plus the notice provided by the government in its summary statement should have sufficed....
> The summary that the Government has provided is sufficient under that rule; and it is sufficient particularly in light of the other disclosures that have been made early on in terms

> of the evidence that was seized and was likely to be used in the course of this trial.... They [the defendants] hang their hats on an unduly technical interpretation of Rule 16 to begin with, and it can't be considered without also taking into account all the other evidence and notifications that were given ...
> [I]t is expert testimony in terms of what a lay jury would know, but in terms of the standard prosecution of drug cases, it is not unusual evidence or testimony, it's not complicated, it's not complex. As this witness has testified in his own proffer, it's true in 99 percent of the cases that these items of evidence are found, seized, and used in the prosecution. So the lawyers cannot have been surprised by any of these developments, misled or prejudiced.

permitted Kenney to testify.[3] Neither Jackson nor Rodriguez sought a continuance to prepare for cross-examination of this expert testimony.

■ The application of 16(a)(1)(E) is an issue of first impression for this Court. Rule 16(a)(1)(E) mandates that the government provide a written summary of any expert witness testimony, including: (1) the witness' opinions; (2) the bases and reasons for the opinions; and (3) the qualifications of the experts. We review a district court's ruling on a Rule 16 motion for an abuse of discretion. *United States v. D'Antoni*, 856 F.2d 975, 984 (7th Cir.1988).

■ In this case, which involved expert testimony regarding the drug courier profile, the government's summary[4] in response to the defendants' requests satisfied—although barely—the requirements of Rule 16. First, the summary "describe[d] the witnesses' opinions." It stated that the witnesses "may testify at trial concerning the use of beepers, firearms, walkie-talkies, and Western Union wire transfers in connection with the sale of narcotics." This statement notified the defendants that the witnesses were of the opinion that certain paraphernalia and profile evidence were frequently linked to the sale of narcotics. Furthermore, the government explained that the witnesses "may testify that narcotics traffickers often secure locations such as houses or apartments to serve as a base for dealing narcotics." Again, this statement informed the defendants that the witnesses would testify regarding their opinions about the location profile of drug sales.

■ The government's statement also sufficiently "describe[d] ... the bases and the reasons" for their opinions, and "the witnesses' qualifications." Fed.R.Crim.P. 16(a)(1)(E). The government letter indicated

that the officers' testimony would, in part, be based on the use of beepers, firearms, walkie-talkies and wire transfers. Additionally, they would "base their testimony on their years of training and experience in the area of drug investigations." In the context of testimony regarding the drug courier profile, notification that the witnesses would be testifying from years of experience as narcotics agents is sufficient. The summary provided the defendants with both the grounds and the background for the testimony, enabling them to prepare for cross-examination. Other contexts, such as cases involving technical or scientific evidence, may require greater disclosure, including written and oral reports, tests, investigations, and any other information that may be recognized as a legitimate basis for an opinion under Fed.R.Evid. 703. *See* Fed.R.Crim.P. 16(a)(1)(E) advisory committee note.

In this instance, we hold that the government's notice met the requirements of Rule 16(a)(1)(E). What was provided was the minimum notice required under the Federal Rules of Criminal Procedure. The government supplying anything less in the future will risk running afoul of the rule. Although the rule was not violated here, in light of the somewhat amorphous parameters of the drug courier profile, in future cases we strongly encourage the government to offer more specific descriptions of the opinions of the witnesses, foundations for their testimony, and their qualifications.

■ Even had the government violated the rule, the appropriate remedy was not necessarily exclusion of the testimony. Fed. R.Crim.P. 16(d)(2) specifically provides several potential remedies the district court may take in response to discovery violations. 16(d)(2) states that the court "may," but is

---

**3.** Kenney testified that: (1) in 99% of drug cases, sellers of drugs carry digital beepers; (2) drug dealers often use two-way radios in connection with drug houses to avoid police detection and to assist in servicing customers; (3) drug traffickers commonly use scales to weigh quantities of narcotics; (4) drug traffickers commonly carry United States currency; (5) drug dealers commonly use firearms to protect themselves against theft by buyers and other dealers; (6) the quantities of cocaine base seized from the apartment were

demonstrative of possession for sale; and (7) crack houses are typified by the lack of furniture and the advance payment of rent.

**4.** Given that the expert testimony summary that the government sent to Jackson was substantially identical to that sent to Rodriguez (differing only in that the name "Emmit C. Carney" was cited in place of "Paul Arkins"), we treat the responses as one.

not required to, impose sanctions including ordering disclosure, granting a continuance, prohibiting admission of the evidence, or any other response deemed necessary. This rule does not mandate the suppression of evidence for a discovery violation. These sanctions are left to the discretion of the court, *United States v. Beverly*, 913 F.2d 337, 355 (7th Cir.1990), *cert. denied*, 498 U.S. 1052, 111 S.Ct. 766, 112 L.Ed.2d 786 (1991), and we will not second guess its decision. A new trial would be warranted "only if the government violated Rule 16 and the remedy offered by the district court was inadequate to provide him with a fair trial." *United States v. Mounts*, 35 F.3d 1208, 1217 (7th Cir.1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 1366, 131 L.Ed.2d 222 (1994).

### B.

Jackson and Rodriguez also both argue that the court violated their Sixth Amendment confrontation rights when it prevented them from questioning a witness about a past act of perjury. During the cross-examination of O'Malley, the landlord of the raided apartment, counsel for both defendants attempted to question him regarding statements he had made on a petition for bankruptcy. The government objected to the inquiry and the defense made an order of proof at the bench, alleging that O'Malley's bankruptcy petition failed to list all lawsuits in which he had been involved in the past ten years, thus amounting to perjury. The defendants argue that they needed to bring out those false statements in order to attack O'Malley's credibility.

Although the Sixth Amendment confrontation clause [5] guarantees defendants the right to cross-examine witnesses, *see Ohio v. Roberts*, 448 U.S. 56, 62–64, 100 S.Ct. 2531, 2537–38, 65 L.Ed.2d 597 (1980); *United States v. Valles*, 41 F.3d 355, 359 (7th Cir. 1994), the trial court "retains broad discretion in limiting the extent and scope of cross-examination." *Id.* (citing *United States v. Pizarro*, 717 F.2d 336, 347 (7th Cir.1983)). The right of cross-examination, whether as a matter of constitutional law or the Federal Rules of Evidence, is not absolute. *United States v. Rainone*, 32 F.3d 1203, 1207 (7th Cir.1994) (citing *Olden v. Kentucky*, 488 U.S. 227, 231–32, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988)). The trial court retains the ability to place reasonable limits on cross-examination. *Nelson*, 39 F.2d at 708; *United States v. Saunders*, 973 F.2d 1354, 1358 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 1026, 122 L.Ed.2d 171 (1993).

Ordinarily, we review the district court's rulings regarding the scope of cross-examination for an abuse of discretion. *United States v. Nelson*, 39 F.3d 705, 708 (7th Cir.1994); *United States v. Neely*, 980 F.2d 1074, 1080 (7th Cir.1992). However, we review limitations *de novo* where they directly implicate the Sixth Amendment right to confrontation. *Nelson*, 39 F.3d at 708. Thus, in deciding whether limitations on cross-examination are permissible, we must "distinguish between the core values of the confrontation right and more peripheral concerns which remain within the ambit of the trial judge's discretion." *Saunders*, 973 F.2d at 1358.

Limiting a party's right to cross-examine for the purposes of impeachment is more a peripheral concern than a "core value." *Nelson*, 39 F.3d at 709; *United States ex rel. Ashford v. Director, Ill. Dept of Corr.*, 871 F.2d 680, 683 (7th Cir.1989) (the "general credibility of a witness is a matter collateral to the Sixth Amendment confrontation right."). "A trial court violates the Sixth Amendment only where it has so abused its discretion as to prevent the jury from making a discriminating appraisal of the witness' testimony," *Valles*, 41 F.3d at 359 (citing *United States v. Wellman*, 830 F.2d 1453, 1465 (7th Cir.1987)), and such is not the case here. Jackson and Rodriguez contend that since a central issue in the defense was whether each had control over the apartment, they deserved the opportunity to impeach O'Malley's credibility. The defendants challenged O'Malley's records and statements regarding the defendants' occupancy

---

5. The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him...." U.S. Const. amend. VI.

of the raided apartment. Furthermore, the defense already had impeached O'Malley. He had made pretrial statements to the police in which he told them that he rented only to one man. He later testified that he received rent money only from Rodriguez and never from Jackson and could not be certain that Jackson was in fact the second tenant. The defense also produced direct testimony contradicting O'Malley's contentions. Since Jackson and Rodriguez took advantage of other opportunities to explore O'Malley's credibility before the jury, the limits placed on their cross-examination did not unduly interfere with the jury's ability to appraise his motive or potential bias. *See United States v. Williams,* 858 F.2d 1218, 1223 (7th Cir.1988), *cert. denied,* 488 U.S. 1010, 109 S.Ct. 796, 102 L.Ed.2d 787 (1989).

The Federal Rules of Evidence also provide that admissibility of evidence intended to impeach the credibility of a witness is largely a matter for the discretion of the trial court. Rule 608(b) states:

> Specific instances of the conduct of a witness for the purpose of attacking the credibility, other than conviction of crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however-er, *in the discretion of the court,* if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness concerning the witness' character for truthfulness or untruthfulness ...

Fed.R.Evid. 608(b) (emphasis added); *see Nelson,* 39 F.3d at 710. The district court's actions did not violate the Sixth Amendment or the limits of the Federal Rules of Evidence.

### C.

Jackson and Rodriguez also maintain that the district court improperly instructed the jury that a conviction under 18 U.S.C. § 924(c)(1) could be based on constructive possession. Specifically, the defendants objected to the court's instruction number 20, which stated:

> For the government to sustain its burden of proof that a defendant carried a firearm, it need not show that a defendant actually carried the firearm on his person. It is

sufficient if you find that at a given time he had the ability and intent to control the firearm and the circumstances of the case show that the firearm facilitated or had a role in the crime being committed. Having a gun accessible during a drug transaction is sufficient to meet the "use or carry" requirements of 18 U.S.C. § 924(c).

The district court also instructed that:

> To sustain the charge of carrying or using a firearm during and in relation to a drug trafficking crime, the government must prove the following propositions: ... Third, the defendants carried or used the firearm during and in relation to the commission of a drug trafficking crime.

▮▮▮▮ We review jury instructions as a whole, and so long as the instructions treat the issues fairly and adequately, we will not interfere with them on appeal. *United States v. Sax,* 39 F.3d 1380, 1388 (7th Cir. 1994) (citing *United States v. Ruiz,* 932 F.2d 1174, 1179 (7th Cir.), *cert. denied,* 502 U.S. 849, 112 S.Ct. 151, 116 L.Ed.2d 116 (1991)); *United States v. Boykins,* 9 F.3d 1278, 1285 (7th Cir.1993). We consider "whether the jury was misled in any way and whether it had an understanding of the issues and of its duty to determine those issues." *United States v. Perez,* 43 F.3d 1131, 1137 (7th Cir. 1994); *United States v. Donovan,* 24 F.3d 908, 916–17 (7th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 269, 130 L.Ed.2d 187 (1994).

▮▮▮▮ To convict under § 924(c), the government must prove beyond a reasonable doubt that the defendant: (1) possessed a gun; and (2) used it in relation to a drug offense. *United States v. Chairez,* 33 F.3d 823, 825 (7th Cir.1994). A defendant must know of the firearm's existence in order to have possession or control of it, *Chairez,* 33 F.3d at 825 (citing *United States v. Edun,* 890 F.2d 983 (7th Cir.1989)), but mere possession of the firearm is not enough to convict. *United States v. Villagrana,* 5 F.3d 1048, 1051 (7th Cir.1993). The government must also prove some relation to or connection between the underlying criminal act and the use or possession of the firearm. *Id.* at 1051; *see United States v. James,* 40 F.3d 850 (7th Cir.1994) (the firearm must have

some purpose or effect with respect to the drug trafficking crime), *cert. denied,* —— U.S. ——, 115 S.Ct. 948, 130 L.Ed.2d 891 (1995). We do not require proof that the defendants actually used the gun, and mere proximity to a firearm can establish that the firearm was used in furtherance of a crime. *Chairez,* 33 F.3d at 825, n. 2 (citing *United States v. Carson,* 9 F.3d 576, 582 (7th Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 135, 130 L.Ed.2d 77 (1994)). Evidence that a firearm was in proximity and available for protection during the course of a narcotics offense is sufficient. *United States v. Edwards,* 36 F.3d 639, 644 (7th Cir.1994).

An examination of the instructions as a whole shows that the district court's instructions accurately stated the law in describing both the possession and connection requirements. The court first told the jury that it must find that the defendant "had the ability and intent to control the firearm." This portion of the instruction required the jury to find that the defendant, although not actually brandishing the weapon, possessed it through his ability and intent to control it. The court then informed the jury that it must find that the "firearm facilitated or had a role in the crime being committed." This second part of the instruction conveyed to the jury that the gun "must facilitate or have the potential of facilitating the drug trafficking offense." *Villagrana,* 5 F.3d at 1051–52. Therefore, the instructions as given were sufficiently clear as not to mislead the jury.

## D.

Jackson contends that the district court improperly admitted evidence that the government used to show his connection with the apartment under Fed.R.Evid. 403. Specifically, Jackson objected to the admission of exhibits of receipts containing his last name (and in one instance, his address). During trial, the government introduced receipts found in the duffle bag in the second bedroom bearing the name *"Tajh* Jackson." Jackson objected to the admission of these receipts, arguing that there was no evidence that he and "Tajh" Jackson were the same person and that, other than containing a common last name, the receipts were not

related to him. He contends that the limited relevance of the receipts is outweighed by the danger that the jury would interpret them as belonging to him, even though there was no evidence that he was "Tajh" Jackson. We review the district court's decision to admit the challenged evidence for an abuse of discretion. *United States v. Wilson,* 31 F.3d 510, 514 (7th Cir.1994); *United States v. Kreiser,* 15 F.3d 635, 640 (7th Cir.1994).

Fed.R.Evid. 403 provides that relevant "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury ..." Despite Jackson's assertions to the contrary, more evidence than the similarity of names linked Jackson to the receipts. The receipts were found in the same apartment to which Jackson was holding keys and where he was arrested. Moreover, the mere existence of the potential for jury confusion is not enough to warrant exclusion under 403. Rather, this confusion must reach a level which would substantially outweigh its value, a possibility Jackson did not establish. Finally, as the district court pointed out at trial, defense counsel had the opportunity at final argument to clarify any possible confusion. The district court did not abuse its discretion in admitting these exhibits.

## E.

Jackson's final argument, buttressed by little legal support, challenges his possession conviction on sufficiency of the evidence grounds. He argues that because the police found no cocaine or firearms on his actual person, and, because Jackson did not exercise control over any of the guns or drugs found in the apartment, the evidence was insufficient to convict him. The entire thrust of Jackson's argument is that when the police surprised Jackson at the apartment, he was not at that precise moment in time carrying drugs or weapons. He essentially asks us to hold that no matter how close a defendant is to over 100 grams of cocaine and four handguns, if he is not latched on to the contraband at that moment in time he cannot be convicted. We refuse to so hold.

In order to prove possession with intent to distribute cocaine, the government must prove beyond a reasonable doubt that the defendant: (1) knowingly or intentionally possessed cocaine; (2) possessed cocaine with the intent to distribute it; and (3) knew the cocaine was a controlled substance. *United States v. Hernandez,* 13 F.3d 248, 251 (7th Cir.1994). Jackson maintains only that he did not have possession of the cocaine. The government need not prove actual possession; it must only demonstrate that the defendant had constructive possession of the contraband. *Hernandez,* 13 F.3d at 252; *United States v. Martinez,* 937 F.2d 299, 305 (7th Cir.1991). Constructive possession is established when the evidence sufficiently demonstrates ownership, dominion, or control. *Id.* (citing *United States v. Galiffa,* 734 F.2d 306, 316 (7th Cir.1984)). In the instant case, viewing the evidence in the light most favorable to the government, a reasonable jury easily could have concluded that Jackson was in possession of the cocaine found in the apartment in that he was in control of the contents of the apartment. Government witnesses testified that Jackson rented and had keys to the apartment. Other testimony identified Jackson as one of the two individuals who rented the apartment. The raid uncovered documents associated with Jackson inside the apartment. The police discovered over 100 grams of cocaine in the apartment, just feet from where the officers apprehended Jackson. The mere fact that none of the cocaine was found on Jackson's actual person is not dispositive. As we have repeatedly noted, evidence of constructive possession is adequate. *Hernandez,* 13 F.3d at 252. Jackson asks us to ignore the overwhelming mountain of evidence presented by the government and to focus instead on what evidence the government did not present. We will not do so.

For the foregoing reasons, the district court's decision is AFFIRMED.