**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Byron James MILLER, Defendant–
Appellant.**

**No. 99–1579.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 29, 1999.

Decided Dec. 6, 1999.

Thomas A. Keith (argued), Office of the United States Attorney, Peoria, IL, for Plaintiff–Appellee.

George F. Taseff, Office of the Federal Public Defender, Peoria, IL, Jonathan E. Hawley (argued), Office of the Public Defender, Peoria, IL, for Defendant–Appellant.

Before POSNER, Chief Judge, and FLAUM and DIANE P. WOOD, Circuit Judges.

FLAUM, Circuit Judge.

Byron James Miller, the defendant-appellant, appeals his conviction for possession of heroin with intent to distribute,

arguing that the district court erred in refusing to grant his requests for a mistrial based on allegedly improper expert testimony and possible prosecutorial misconduct. For the reasons set forth below, we affirm the decision of the district court.

## I. Facts

The defendant-appellant is an inmate at the Federal Correctional Institute at Pekin, Illinois ("FCI–Pekin"). During a March 15, 1999 visit from his girlfriend, the defendant-appellant was observed engaging in suspicious behavior. The correctional officer who witnessed this conduct reported it to his supervisor, who ordered that the defendant-appellant be secured. The defendant-appellant was then placed in a dry cell for observation.

After several days in the dry cell, the defendant-appellant was seen defecating in a bedpan. When correctional officers examined the contents of the bedpan, they found a green balloon containing eight small cellophane packages filled with heroin. The total amount of that heroin was determined to be 4.4 grams. Based on this discovery, the defendant-appellant was charged in a two-count indictment for possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), and possession of heroin in a federal prison in violation of 18 U.S.C. § 1791(a)(2).

During pre-trial proceedings, the government filed its First Notice of Expert Witness on October 14, 1998. That notice contained, in relevant part, the following as to the proposed testimony of Lieutenant Steve Ruggeri, an employee of the Bureau of Prisons: "Based on his experience, knowledge and training, Lieutenant Ruggeri will provide testimony with respect to the method, manner and means of controlled substance possession, trafficking and distribution in the Bureau of Prisons. He will also testify that the heroin the defendant possessed is consistent with possession with intent to distribute." At a status hearing later that day, the government clarified that Lieutenant Ruggeri's testimony was meant to show that "this quantity of drugs is intended for distribution" and to "aid the jury to realize that inside the prison possessory quantities are of a lesser quantity than it would be on the street."

In response to objections by defense counsel, the district court directed the government to provide a more specific notice. In a Second Notice of Expert Witness, the government declared that:

> Based on his training and 13 years experience as an employee, officer, and supervisor with the United States Bureau of Prisons, and in his dealings with, and investigations of, prison inmates in the course of his employment with the Bureau of Prisons, Lieutenant Ruggeri will provide testimony with respect to the method, manner, and means of controlled substance possession, trafficking and distribution in the Bureau of Prisons. He will also testify that the heroin the defendant possessed is consistent with possession with intent to distribute based on, in part, the quantity, risk of detection, value and common practice of inmates.

In the status meeting that followed, the district court requested another notice "suggesting an offer of proof ... in more detail than you have provided so far."

In response to the district court's request for a more detailed offer of proof, the government filed a Supplement to its Second Notice of Expert Witness. That supplement, in relevant part, stated:

> The government expects Lieutenant Ruggeri will testify that in his opinion the heroin the defendant [sic] possessed is consistent with possession with the intent to distribute. Lieutenant Ruggeri is expected to base his opinion on the amount of heroin involved, the manner of packaging involved, and the value of heroin involved.

> ... The defendant ... possessed 4.4 grams of heroin contained in 8 individually wrapped packages and repackaged

in one envelop [sic]. . . . Lieutenant Ruggeri is expected to testify that a market for user quantities of heroin exists within the inmate population at FCI Pekin such that distribution of this amount of drugs packaged in this manner would occur readily once introduced to the general inmate population.

Lieutenant Ruggeri is expected to testify that inmate drug users would not smuggle drugs into the prison in this quantity or packaged in this manner. . . . Drug users purchase small quantities of drugs such as one of the 8 packages herein or less for fast or immediate consumption so as to avoid detection. Drug distributors typically smuggle larger than user quantities of drugs into the prison contained in smaller packets. . . . . . . Lieutenant Rugger [sic] is also expected to testify that inmate drug users would not have this much heroin in their possession. . . .

After reviewing the government's Supplement to its Second Notice of Expert Witness, the defendant-appellant asked for a continuance of the trial to prepare for Lieutenant Ruggeri's testimony. The district court granted that request for a continuance.

At trial, Lieutenant Ruggeri testified in regard to drug distribution at FCI–Pekin. In response to hypotheticals put before him by the government, Lieutenant Ruggeri stated that in his opinion "the packaging method of that heroin and the sheer volume of that heroin" was not consistent with personal use. He then testified that "there is enough in one gram of brown tar heroin for twenty people to get high." Lieutenant Ruggeri further observed that "the sheer amount [of this heroin] . . . could get up to eighty or more people high." When asked what he meant by the reference to eighty people, Lieutenant Ruggeri replied, "[e]ach gram of brown tar heroin, over my experience as SIS lieutenant, all the information told to me, was that twenty people can get high off one gram of . . . brown tar heroin."

At this point, the defendant-appellant objected to Lieutenant Ruggeri's testimony as to the number of doses per gram of heroin. The basis of this objection was his belief that this testimony violated the notice requirements of Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure.[1] Specifically, defense counsel argued that neither this opinion nor the basis thereof had been disclosed to the defendant-appellant. The district court sustained this objection. While the district court rejected the defendant-appellant's request for a mistrial, it did order the challenged testimony stricken from the record. The district court also issued the following curative instruction to the jury: "For reasons that you are not to concern yourself with, it is my ruling that as to any testimony of this witness concerning how many doses per gram, . . . I'm ordering that that testimony is stricken and you are instructed to disregard that testimony."

During closing argument, the prosecution made the following statement: "[Defendant] wants you to find that he merely possessed these drugs right here for his own personal consumption and not for distribution. That's what he has to establish to you to overcome because we have proven our case. We have put the witnesses on." The defendant-appellant objected to this as a misstatement of the burden of proof and the district court sustained the objection. The court then instructed the jury that the burden of proof "is always on the government," a statement that the government itself acknowledged to be

---

1. Rule 16(a)(1)(E) provides that, "[a]t the defendant's request, the government shall disclose to the defendant a written summary of testimony that the government intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence during its case-in-chief at trial." Rules 702, 703, and 705 of the Federal Rules of Evidence govern "Testimony by Experts," "Bases of Opinion Testimony by Experts," and "Disclosure of Facts or Data Underlying Expert Opinion," respectively.

true.[2] At another point in its closing argument, the government, in reference to statements the defendant-appellant had given during his initial custodial interview, stated that "[the defendant] wishes he could take those statements back now." The defendant-appellant objected to that remark as an improper comment on his state of mind. This objection was also sustained, and the district court instructed the jury to disregard the statement.

At the close of trial, the jury found the defendant-appellant guilty on both charges. The defendant-appellant then filed a motion for a new trial, arguing that he had been denied a fair trial on two grounds: (1) that the government violated Rule 16(a)(1)(E) in failing to disclose Lieutenant Ruggeri's testimony as to doses per gram and the basis of that testimony; and (2) that the government made improper statements during closing argument. The district court denied this motion for a new trial, concluding that such a remedy was not appropriate in view of the cautionary instructions given at trial. The defendant-appellant now appeals this denial of his motion for a new trial, asserting the same errors argued before the district court.

## II. Analysis

### A.

■ The defendant-appellant's first argument on appeal is that the district court erred in denying his motion for a mistrial based on what he contends was a violation of Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure. That rule "mandates that the government provide a written summary of any expert witness testimony, including: (1) the witness' opinions; (2) the bases and reasons for the opinions; and (3) the qualifications of the experts." *United States v. Jackson*, 51 F.3d 646, 651 (7th Cir.1995). The defendant-appellant contends that the government violated

Rule 16(a)(1)(E) by failing to disclose both that Lieutenant Ruggeri would testify as to doses per gram of heroin and the basis of that opinion. The defendant-appellant also argues that the proper remedy for this alleged violation is a new trial, and that the district court erred in limiting the defendant-appellant's remedy to a cautionary instruction.

■ A new trial is the appropriate remedy for a Rule 16 violation " 'only if the government violated Rule 16 and the remedy offered by the district court was inadequate to provide him with a fair trial.' " *Id.* at 652 (quoting *United States v. Mounts*, 35 F.3d 1208, 1217 (7th Cir.1994)). We must first determine whether a Rule 16 violation occurred at all. We make this determination by considering whether the information provided the defendant-appellant, as embodied in the specific details contained in the notices of expert witness, was sufficient to put the defendant-appellant on notice that Lieutenant Ruggeri would testify as to the number of doses per gram of heroin. *See id.* at 651 (analyzing whether the content of government disclosures sufficiently described " 'the witnesses' opinions,' " " 'the bases and reasons' for their opinions," and " 'the witnesses' qualifications' ") (quoting Fed. R.Crim.P. 16(a)(1)(E)). The notices given to the defendant-appellant indicated that much of Lieutenant Ruggeri's testimony would center on the amount of drugs involved. Further, the notices unambiguously stated that the testimony would include inferences about distribution from the sheer amount of drugs, and that such inferences would be based on Lieutenant Ruggeri's years of experience working in prisons. It would not be unreasonable for a court to conclude that this testimony as to the amount of drugs involved, and particularly the amounts consistent with personal use, would encompass statements

---

**2.** In response to the defendant-appellant's successful objection, the prosecutor explained to the jury: "I misspoke. We have the burden and we accept that burden. We have the burden of proof beyond a reasonable doubt on each and every element of the offense and we accept that burden."

about the number of doses per gram of heroin. Nevertheless, the district court deemed the government's actions to be a violation of Rule 16(a)(1)(E), and it issued a cautionary instruction to the jury. While we are not convinced that a Rule 16 violation occurred on the facts of this case, we need not determine whether the district court's finding in that regard was correct because the cautionary instruction issued by the court was sufficient to remedy the alleged violation. *See id.* at 652.

■ We review the district court's denial of defendant-appellant's motion for a mistrial, and its decision to issue a cautionary instruction, under an abuse of discretion standard. *United States v. Cotnam,* 88 F.3d 487, 498 (7th Cir.1996). This focus on the district court's exercise of its discretion is particularly appropriate given the wide range of options available to a district court when addressing a violation of Rule 16. The rule itself provides that a "court 'may,' but is not required to, impose sanctions including ordering disclosure, granting a continuance, prohibiting admission of the evidence, or any other response deemed necessary." *Jackson,* 51 F.3d at 651–52. The defendant-appellant acknowledges that a cautionary instruction is an appropriate remedy in some circumstances. He argues, however, that such a remedy was improper in this case because the instruction given was inadequate to provide him a fair trial. We disagree. In denying the defendant-appellant's motion for a mistrial, and choosing a cautionary instruction instead, the district court did not abuse its discretion.

The district court is in the best position to determine whether the incident was serious enough to justify granting the defendant-appellant's request for a mistrial. *See United States v. Lomeli,* 76 F.3d 146, 149 (7th Cir.1996); *United States v. Hum-*

*phrey,* 34 F.3d 551, 556 (7th Cir.1994). We will not second guess that judgment absent a showing that the district court abused its discretion. *See Jackson,* 51 F.3d at 652 ("These sanctions are left to the discretion of the court, and we will not second guess its decision.") (citation omitted). In this regard, it is significant that this is not the kind of testimony "in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored." *Bruton v. U.S.,* 391 U.S. 123, 136, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968) (holding that defendant was entitled to a new trial where co-defendant's confession was introduced at trial, even though the jury was clearly instructed to disregard the confession as it related to the defendant). The district court properly ordered the jury to disregard the challenged testimony, and we presume that the jury followed that instruction. *See United States v. Nobles,* 69 F.3d 172, 184 (7th Cir.1995); *United States v. Soria,* 965 F.2d 436, 441 (7th Cir.1992) (stating that we must "presume [ ] that the jury will follow an instruction to disregard inadmissible evidence unless there is an 'overwhelming' probability that the jury will be unable to follow the court's instructions and a strong likelihood that the effect of the evidence would be 'devastating' to the defendant"). Where, as here, the curative instruction adequately addresses that aspect of the testimony that is improper, it is not an abuse of discretion for the district court to deny the defendant-appellant's request for a mistrial.[3] *See Lomeli,* 76 F.3d at 149 ("It is not an abuse of discretion for the trial judge to issue a curative instruction after improper testimony is adduced at trial rather than grant a mistrial, so long as the instruction adequately addresses that aspect of the testimony which was

---

**3.** In *United States v. Salerno,* we noted that, in order to obtain a reversal on appeal for a discovery violation, " 'a defendant must prove both an abuse of discretion and prejudice.' " 108 F.3d 730, 743 (7th Cir.1997) (quoting

*United States v. Alvarez,* 987 F.2d 77, 85 (1st Cir.1993)). Because we hold that the district court did not abuse its discretion in denying the defendant-appellant's motion for a mistrial, we need not reach the issue of prejudice.

improper or permitted an improper inference.").

## B.

The defendant-appellant next contends that he was denied a fair trial based on two improper statements made by the government during closing argument. The first challenged remark was a misstatement of the burden of proof. The defendant-appellant alleges that this misstatement denied him due process of law and improperly referred to his refusal to testify or put on witnesses. The second challenged remark was a comment on the defendant-appellant's state of mind. The defendant-appellant contends that this statement was not based on the evidence submitted at trial, and was therefore improper. Although the district court did issue cautionary instructions as to both remarks, the defendant-appellant argues that these cautionary instructions were not sufficient to remedy the prosecutorial misconduct at issue.

 In reviewing each prosecutorial statement, we must first determine "whether the comments, looked at in isolation, were improper." *United States v. Cusimano*, 148 F.3d 824, 831 (7th Cir. 1998). If we determine that the remarks were improper, "we then look at the remarks in the light of the entire record to determine whether the defendant was deprived of a fair trial." *Id.* In assessing the impact of the improper remarks on the fairness of the trial, we consider five factors:

1) the nature and seriousness of the prosecutorial misconduct; 2) whether the conduct of the defense counsel invited the prosecutor's remarks; 3) whether the trial court's instructions to the jury were adequate; 4) whether the defense was able to counter the improper arguments through rebuttal; and 5) the weight of the evidence against the defendant.

*Id.* at 831–32 (quoting *United States v. Granados*, 142 F.3d 1016, 1021–22 (7th Cir.1998)). After assessing the impact of the improper remarks on the fairness of the trial, we must then determine whether, in light of that impact, the district court abused its discretion in choosing a corrective instruction as the appropriate remedy. *Cotnam*, 88 F.3d at 498.

### 1. The Misstatement of the Burden of Proof

 The first prosecutorial remark the defendant-appellant challenges was a misstatement of the burden of proof. During closing argument, the prosecutor argued: "[The defendant] wants you to find that he merely possessed these drugs right here for his own personal consumption and not for distribution. That's what he has to establish to you to overcome because we have proven our case. We have put the witnesses on." We agree with the defendant-appellant that this statement mischaracterized the law and was improper. In a criminal trial the burden of proof as to all elements remains on the government, *see In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), and this statement seems to indicate that some burden had shifted to the defendant-appellant by the weight of the government's case. Nevertheless, a mere misstatement of the law is insufficient in and of itself for us to determine that the defendant-appellant suffered some prejudice from the improper remark. Rather, the misstatement must infringe on the defendant-appellant's right to a fair trial to such a degree that the district court's decision denying a mistrial rises to the level of an abuse of discretion. *Cusimano*, 148 F.3d at 831.

After examining the record against the backdrop of the five factors outlined above, we conclude that the prosecutor's misstatement of the burden of proof did not significantly impact the defendant-appellant's ability to obtain a fair trial. In so concluding, we recognize the importance of the right at stake, and the seriousness of the prosecutor's misstatement. We also rec-

ognize that this remark was directed at the only contested issue at trial, and that the defendant-appellant had no opportunity to counter the misstatement. However, the evidence against the defendant-appellant was overwhelming. More significantly, the district court instructed the jury, both orally and in writing, that the government had the burden of proving the defendant-appellant guilty beyond a reasonable doubt. *See United States v. Hauert*, 40 F.3d 197, 205 (7th Cir.1994) (holding that the prosecution's misstatement as to the burden of proof did not constitute reversible error because "the district court's instructions made it clear that the burden of proof remained with the government throughout"). In the absence of evidence to the contrary, we presume that the jury followed the district court's instruction and properly understood the burden of proof. *See Nobles*, 69 F.3d at 184.

Given that our analysis indicates that the impact of the prosecutor's misstatement of the burden of proof was slight, we conclude that it was not an abuse of discretion for the district court to issue a cautionary instruction. In this case, it was not unreasonable for the district court to conclude that "the jury can and will follow the trial judge's instructions." *See Bruton*, 391 U.S. at 135, 88 S.Ct. 1620. Furthermore, there is no indication that the jury was left with any misunderstanding as to the law it was to apply. The district court issued a clear cautionary instruction to the jury indicating the burden of proof always remained on the government, and the prosecutor himself acknowledged this fact before the jury. Because the district court was able to adequately correct the prosecution's error, that court's decision to deny defendant-appellant's request for a mistrial does not constitute reversible error. *See Lomeli*, 76 F.3d at 149.

■ The defendant-appellant also contends that the prosecutor's misstatement of the burden of proof violated his Fifth Amendment right to refuse to testify or present witnesses on his own behalf. The

defendant-appellant's argument is based on the idea that the prosecutor's misstatement of the burden of proof, when coupled with the reference to the witnesses that the prosecution put on, implicitly referred to the defendant-appellant's decisions not to testify and not to put on any witnesses. To the extent the prosecutor's statement did refer to the defendant-appellant's exercise of his Fifth Amendment rights, that reference could constitute reversible error. *See Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Cotnam*, 88 F.3d at 497–500. Because the defendant-appellant failed to identify this as a ground for objection, we review only for plain error and look to see whether the prosecutor's remark " 'affected the outcome of the District Court proceedings.' " *United States v. Wing*, 104 F.3d 986, 989 (7th Cir.1997) (quoting *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)).

■ Initially, it is not clear to us how the prosecutorial statements at issue can be construed as a comment on the defendant-appellant's exercise of his Fifth Amendment rights. The challenged statements do not mention the defendant-appellant, and refer only to the witnesses put on by the government. If this is a reference to the defendant-appellant's refusal to testify or put on witnesses, it is at most tangential. Even if we deem the prosecutor's comment to be a reference to the defendant-appellant's failure to testify, however, it does not necessarily constitute a violation of the defendant-appellant's constitutional rights. In circumstances where the comment on the defendant's failure to testify is indirect, the defendant's Fifth Amendment right against self-incrimination is violated only if "1) it was the prosecutor's manifest intention to refer to the defendant's silence, or 2) the remark was of such a character that the jury would 'naturally and necessarily' take it to be comment on the defendant's silence." *Cotnam*, 88 F.3d at 497.

When the prosecutor's comment as to the burden of proof is viewed in its context, it is clear that neither prong of this test is satisfied. There is no indication that the prosecutor intended to refer to the defendant's exercise of his privilege not to testify, nor is the statement of the sort that a jury would "naturally and necessarily" take to be a comment on the exercise of that privilege. *See id.* at 499 (holding that the prosecutor's reference to government evidence as "uncontroverted" was an impermissible comment on the defendant's refusal to testify if the defendant was the only person in a position to challenge that evidence). In the absence of such a showing, we cannot conclude that the district court plainly erred in denying defendant-appellant's motion for a mistrial based on the prosecutor's alleged reference to the defendant-appellant's exercise of his Fifth Amendment rights.

### 2. The Defendant–Appellant's State of Mind

█ The second prosecutorial remark challenged by the defendant-appellant occurred during closing argument when the prosecutor stated: "[T]his testimony that was given by Lieutenant Ruggeri was corroborated by the confessions and admissions of the defendant when he interviewed with Special Agent Evans. He wishes he could take those statements back." The defendant-appellant contends that this statement improperly referred to his state of mind because the inference could not fairly be drawn from the evidence. *See United States v. Vargas*, 583 F.2d 380, 385 (7th Cir.1978). While the government contends that this was a proper comment based on the evidentiary record, *see United States v. Sblendorio*, 830 F.2d 1382, 1391 (7th Cir.1987), we need not resolve this issue at present. The trial court sustained an objection as to this remark, and we will proceed to analyze it as if it were in fact improper.

We review the district court's denial of the defendant-appellant's request for a mistrial for an abuse of discretion, *see Cotnam*, 88 F.3d at 498, and we reverse the decision of the district court only if we determine that the improper argument by the government deprived the defendant-appellant of a fair trial. *See United States v. Butler*, 71 F.3d 243, 254 (7th Cir.1995). Here the prosecutor's error, if there was one, was minor, and the evidence presented at trial overwhelmingly pointed to the defendant-appellant's guilt. In addition, the district court issued a cautionary instruction telling the jury to disregard the challenged statement, and at the close of the evidence the district court instructed the jury that nothing said during closing argument was to be considered as evidence. Against this factual backdrop, it was not an abuse of discretion for the trial court to choose a cautionary instruction as the proper remedy. The district court's corrective instruction properly remedied any prejudice that may have flowed from the prosecutor's comment on the defendant-appellant's state of mind, and the district court did not abuse its discretion in determining that such an instruction ensured the defendant-appellant of his right to a fair trial.

### III. Conclusion

The district court did not abuse its discretion in denying the defendant-appellant's requests for a new trial based on an alleged violation of Rule 16(a)(1)(E) and improper remarks made by the prosecutor during closing argument. Accordingly, we AFFIRM the decision of the district court.