**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael A. REMSZA, Defendant–
Appellant.**

**No. 95–2580.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1996.

Decided March 12, 1996.

Chris R. Larson (argued), Office of the United States Attorney, Milwaukee, WI, for plaintiff-appellee.

Michael J. Fitzgerald (argued), Coffey, Coffey & Geraghty, Milwaukee, WI, for defendant-appellant.

Before WOOD, Jr., ESCHBACH, and DIANE P. WOOD, Circuit Judges.

ESCHBACH, Circuit Judge.

Michael Remsza was indicted for falsely representing to Francis McGowan and Badger Guns & Ammunition, licensed firearms dealers in Wisconsin, that he was the purchaser of three weapons when in fact Remsza purchased the weapons for Scott Turknette and Darin Senn. Turknette and Senn, California residents, were ineligible to purchase the weapons themselves. At trial, the government introduced evidence that Remsza had similarly purchased firearms for other persons. Remsza made no objection. In cross-examination by the government, Remsza effectively admitted that he also lied to the firearms dealers about his drug use. Remsza made no objection to the government's cross-examination. The district court gave a broad jury instruction, suggesting that Remsza could be convicted if the jury found that Remsza intentionally made a false statement to McGowan and Badger Guns & Ammunition. Still, Remsza made no objection. Remsza was convicted, and then asked the district court to reverse the verdict or grant a new trial, arguing that the testimony and jury instruction constructively amended the indictment. The district court refused. Now Remsza appeals, asking us to vacate his conviction as to counts three and four and remand for a new trial. Remsza renews his claim that counts three and four were constructively amended and argues, in the alternative, that his counsel's failure to make the requisite objections at trial amounted to ineffective assistance of counsel. Because we conclude that Remsza suffered no prejudice as a result of the testimony, the jury instruction, or his counsel's conduct, we AFFIRM.

## I.

On November 1, 1994, a grand jury indicted Michael Remsza on four counts. The first court charged Remsza with conspiracy to distribute controlled substances, including marijuana and cocaine. Count two alleged that Remsza distributed marijuana. Count three charged Remsza with making a false statement to Badger Guns & Ammunition, a licensed firearms dealer in Wisconsin, on an ATF form in connection with the purchase of a Colt semi-automatic .380 caliber pistol. The false statement was that Remsza, a Wisconsin resident, was the purchaser of the pistol when in fact the actual purchaser was out-of-state resident Scott Turknette. Similarly, count four charged Remsza with making a false statement to Francis J. McGowan and Badger Guns & Ammunition, both of whom are licensed firearms dealers in Wis-

consin, on ATF forms in connection with the purchase of a 9mm semi-automatic pistol and a semi-automatic rifle. The false statement was that Remsza was the purchaser of the guns when in fact the actual purchaser was out-of-state resident Darin Senn.

At trial, the government produced overwhelming proof that Remsza made the false statements described in counts three and four.[1] The government introduced evidence demonstrating that Remsza took part in a conspiracy with Turknette and Senn, among others, to ship drugs from California to Wisconsin. Remsza purchased firearms in Wisconsin on behalf of his California compatriots even though as out-of-state residents they were legally precluded from buying the weapons directly from a Wisconsin firearms dealer.

Scott Turknette testified that in "mid spring" of 1994 he wanted a handgun to use in conjunction with his job as bouncer for a California nightclub. He said that he wanted a gun from Wisconsin because Wisconsin has cheaper guns and a shorter waiting period than California. To acquire the gun, Turknette turned to Remsza. Turknette said that he accompanied Remsza to Badger Guns & Ammunition (hereafter "Badger Guns"). He showed Remsza the gun that he wanted—a Smith & Wesson .380 special-and gave Remsza $440 to purchase the gun. Remsza purchased the gun. However, Remsza decided that he liked the gun and kept it, promising to buy Turknette another gun. According to Turknette, Remsza kept his word. The two returned to Badger Guns; this time Turknette wanted a .380 caliber semi-automatic. After Turknette indicated to Remsza the gun that he wanted, Remsza bought the gun. Remsza received the gun after the requisite waiting period and delivered the gun to Turknette.

Darin Senn testified that he attended a gun show at the State Fair Park in Milwaukee, Wisconsin, on April 23 and 24, 1994. An H & K 9 mm semi-automatic assault pistol[2] and a semi-automatic assault rifle caught Senn's eye. Senn said that the gun dealer,

Francis McGowan, refused to sell the guns to Senn because Senn was not a Wisconsin resident. Senn turned to Remsza. According to Senn, Remsza made the purchases with drug proceeds furnished by Senn. Because McGowan lived far away, Remsza arranged to have the guns delivered to Badger Guns. Remsza picked up the guns from Badger Guns and delivered them to another coconspirator, Allen Stockman.

Apparently in an effort to introduce "other acts" evidence, the government called Perry Earl. Earl is a coconspirator of Remsza's who is also non-resident of Wisconsin. Earl testified that Remsza purchased a Valmet 223 assault weapon for him at the same gun show where Remsza purchased the guns for Darin Senn.

Testifying in his own defense, Remsza denied that he purchased any of the weapons in question for either Turknette or Senn. To impeach Remsza's credibility on cross-examination, the prosecutor asked Remsza whether he had lied in answering other questions on the ATF forms. Remsza testified that he is an occasional drug user. Remsza's testimony effectively was an admission that he lied on the ATF forms about his drug use. To further impugn Remsza's credibility, the government in its closing argument reminded the jury of Remsza's penchant for lying. The prosecutor said:

[W]hat Mr. Remsza did was purchase those guns for Darin Senn, the one that was the out-of state resident, the one that is the ineligible purchaser. And we'll talk a little bit about those firearms purchases in a minute.

Now, this is not the only time that Mr. Remsza has lied. He lied on at least four ATF forms regarding his drug use. He lied to the probation office while out on bond in this case....

(Tr. at 715).

Now, the evidence also showed in this case that there was a fourth straw purchase of a Valmet for Perry Earl, if you remember,

---

1. Because only counts three and four are at issue in this appeal, we will only discuss the evidence related to those counts.

2. Senn identified the government's exhibit as the assault pistol purchased for him by Remsza.

at the gun show. And, ladies and gentlemen, in addition to all the other evidence, that show's what Mr. Remsza's intent really was when he did the transactions that are named in the indictment in counts three and four.

(Tr. at 722).

At the close of the trial, the district court instructed the jury as follows regarding counts three and four:

Now, counts three and four of the indictment allege that the defendant, Michael A. Remsza, made a false and fictitious statement to a licensed firearms dealer, with respect to a fact material to the sale, in order to buy a firearm. Considering the evidence as to each count separately, in order for you to find the defendant guilty of this crime, you must be convinced that the government has proved each of the following things beyond a reasonable doubt:

The first is, that the defendant ... made a false statement while acquiring a firearm from Badger Guns and Ammunition, a licensed dealer.

Second, that Michael Remsza knew that the statement was false.

Third, that the statement was intended or likely to deceive Badger Guns and Ammunition with respect to a fact material to the lawfulness—to the unlawfulness of the sale.

(Tr. at 763).

Remsza made no objection to Earl's testimony, the drug use cross-examination, the prosecutor's closing argument, or the jury instruction. On January 13, 1995, a jury found Remsza guilty on all counts. On January 24, 1995, Remsza filed a motion for judgment of acquittal or for a new trial as to counts three and four. Remsza argued that the evidence presented by the government in combination with the jury instructions constructively amended counts three and four in violation of the Fifth Amendment. The dis-

trict court denied Remsza's motion. Remsza now brings this timely appeal. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

A constructive amendment is per se reversible where the defendant raised the proper objections below. *Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960); *United States v. Willoughby*, 27 F.3d 263, 266 (7th Cir.1994). However, the government correctly argues that because Remsza objected to neither the evidence nor the jury instruction in question, he waived[3] the objection on appeal. Therefore, we review for plain error. *United States v. Leichtnam*, 948 F.2d 370, 375 (7th Cir.1991). Reviewing Remsza's conviction for plain error, we affirm.

A constructive amendment occurs where the offense proven at trial was not included within the parameters of the indictment. *United States v. Mosley*, 786 F.2d 1330, 1335 (7th Cir.), *cert. denied*, 476 U.S. 1184, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986). An amendment may result in either one of two ways. An amendment can result where a "complex set of facts" is presented to the jury that is "distinctly different" from the facts set forth in the indictment. *United States v. Kuna*, 760 F.2d 813, 817 (7th Cir. 1985). Alternatively, an amendment can result where the evidence presented at trial proves a violation of substantive law "materially different" from that charged in the indictment. *Id.* In the case at bar, Remsza argues that the former occurred. According to Remsza, his own testimony about his drug use, combined with Earl's testimony and the jury instruction amended the indictment. Specifically, Remsza claims that the jury may have convicted him based on his drug use and the Earl purchase, rather than on the purchases for Turknette and Senn as described in the indictment.

---

3. In *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Court defined "waiver" as the intentional relinquishment of a known right and "forfeiture" as the failure to "make the timely assertion of a right." *Id.* at 733, 113 S.Ct. at 1777. When we say

herein that Remsza "waived" his constructive amendment claims by failing to make timely objections below, we mean that Remsza forfeited his claims as the Court defined "forfeiture" in *Olano*.

■ We need not decide whether the testimony in question combined with the jury instruction amended counts three and four. Assuming arguendo that counts three and four were constructively amended, we find no plain error. "Plain error" was clearly defined by the Supreme Court in *United States v. Olano*, 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993). First, we must find "error": the deviation from a legal rule. *Id.* at 732–34, 113 S.Ct. at 1777. Second, the error must be "plain"; it must be clear or obvious. *Id.* Finally, the error must " 'affec[t] substantial rights.' " *Id.* at 733–34, 113 S.Ct. at 1777–78 (quoting Fed. Rule Crim. Proc. 52(b)). In an effort to clarify when an error affects substantial rights, the Court said "in most cases it means that the error must have been prejudicial: It must have affected the outcome of the District Court proceedings." *Id.* at 734, 113 S.Ct. at 1778.

■ In *Olano*, the Court refused to decide "whether the phrase 'affecting substantial rights' is always synonymous with 'prejudicial.' *"Id.* In dicta the Court hinted that some constitutional errors can be so corruptive to the judicial process that they may be corrected without a showing of prejudice, while still others may warrant a presumption of prejudice. *Id.* The Court's dicta aside, the law in this circuit is clear. In the context of plain error review, the amendment must constitute "a mistake so serious that but for it the [defendant] probably would have been acquitted" in order for us to reverse. *United States v. Gunning*, 984 F.2d 1476, 1482 (7th Cir.1993); *Leichtnam*, 948 F.2d at 375. In other words, the constructive amendment must be prejudicial.

■ Counts three and four allege violations of 18 U.S.C. § 922(a)(6): knowingly making a false statement to a firearms dealer in the acquisition of a firearm which is likely to deceive the dealer as to the lawfulness of the transaction. *United States v. Petitjean*, 883 F.2d 1341, 1345 (7th Cir.1989). When a legally eligible purchaser represents that he is the purchaser of a firearm when, in fact, he is the "straw purchaser" for another who is legally ineligible, the purchaser violates § 922(a)(6). *United States v. Howell*, 37 F.3d 1197, 1202 (7th Cir.1994). In the case at bar,

the testimony of Turknette and Senn provides compelling proof that Remsza committed the crimes alleged in counts three and four. We find no indication that but for the testimony and jury instruction of which Remsza complains, the jury would have reached a different result on either count. Remsza has directed us to nothing in the record to convince us otherwise. Therefore, we conclude that Remsza suffered no prejudice; no plain error resulted.

■ Further, as the Court noted in *Olano*, once plain error is established Federal Rule of Criminal Procedure 52(b) leaves the decision to correct the error "in the sound discretion of the Court of Appeals." *Id.* at 732, 113 S.Ct. at 1776. The court "should not exercise that discretion unless the error 'seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* (quoting *United States v. Young*, 470 U.S. 1, 15, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985)). The evidence against Remsza as to counts three and four is so compelling that even if we were able to exercise our discretion, we would choose not to do so. Nothing about the jury's verdict calls into question the integrity or fairness of the trial.

### III.

■ Remsza also argues that his trial counsel's failure to object to the evidence and jury instruction amounted to ineffective assistance of counsel, in violation of the Sixth Amendment. As we have said many times, to prevail on an ineffective-assistance claim an appellant must show that his counsel's conduct was both objectively unreasonable and prejudicial to the outcome of the trial. *United States ex rel. Simmons v. Gramley*, 915 F.2d 1128, 1133 (7th Cir.1990). The prejudice prong of the ineffective-assistance test is essentially identical to the prejudice requirement discussed supra regarding constructive amendments. The appellant must show that but for his counsel's errors the result of the trial would have been different. *Id.* For all of the reasons Remsza failed to establish prejudice for his Fifth Amendment claim, so too he fails to establish prejudice for his Sixth Amendment claim.

**Conclusion**

We conclude that the jury instructions, Earl's testimony, Remsza's testimony about his drug use, and the conduct of Remsza's trial counsel were not prejudicial to the result reached in Remsza's trial.   Remsza's convictions are AFFIRMED.