UNITED STATES of America

v.

**Michael D. ANDREAS;  Mark E. Whitacre;  Terrance S. Wilson, and Kazutoshi Yamada.**

**No. 96 CR 762.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 17, 1998.

James T. Phalen, John M. Bray, Kevin M. Dinan, Schwalb, Donnenfeld, Bray & Silbert, Washington, DC, John David Shakow, King & Spalding, Washington, DC, Joseph J. Duffy, Stetler & Duffy, Ltd., Chicago, IL, for Michael Andreas.

Bill T. Walker, Granite City, IL, Kristina L.M. Anderson, Fishman, Merrick, Miller, Genelly, Springer, Klimek & Anderson, P.C., Chicago, IL, Robert W. Fleishman, Mark J. Hulkower, Reid H. Weingarten, Steptoe & Johnson, Washington, DC, for Mark E. Whitacre.

Philip A. Guentert, U.S. Attorney's Office, Chicago, IL, Jerry Michael Santangelo, Neal, Gerber & Eisenberg, Chicago, IL, for U.S.

## MEMORANDUM AND ORDER

MANNING, District Judge.

Defendants Michael D. Andreas and Terrance S. Wilson now move for judgment of acquittal, pursuant to Fed.R.Crim.P. 29. First, they argue there is insufficient evidence to prove they committed an unreasonable restraint of trade in violation of Section 1 of the Sherman Antitrust Act, 15 U.S.C. § 1, as to the sales volume allocation allegation. Next, they contend the court must acquit them since the government has proven, at best, that the defendants participated in smaller and distinct conspiracies instead of the broad lysine conspiracy alleged to exist from June 1992 (beginning with the Mexico City meeting) until June 27, 1995.

Finally, they argue that they must be acquitted based on a variance or constructive

amendment to the indictment, which they contend occurred when the government allegedly introduced evidence outside the scope of the indictment. For the reasons set forth below, the motion to acquit the defendants is denied in its entirety.

### DISCUSSION

In deciding a motion for judgment of acquittal under Fed.R.Crim.P. 29, the court must construe all evidence in a light most favorable to the government and deny the motion if the court concludes that "any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt." *United States v. Cunningham,* 108 F.3d 120 (7th Cir.1997). With this standard in mind, the court addresses the individual arguments for acquittal.

**1. *Sufficiency of Evidence for § 1 Violation***

The defendants contend that, as a matter of law, they cannot be convicted of effectuating an unreasonable restraint of trade in violation of the Sherman Act. The argument revolves around whether the alleged lysine price-fixing conspiracy is governed by the per se or "Rule of Reason" doctrines governing antitrust violations. The defendants contend that sales volume allocation has never been declared a per se violation of the antitrust laws and therefore is governed by the Rule of Reason. That is, sales volume allocation is not deemed illegal unless the government produces economic evidence that establishes that the alleged sale volume allocation amounts to an unreasonable restraint of the lysine market. *See generally State Oil Co. v. Khan,* 522 U.S. 3, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997).

The government opposes the motion, arguing that sales volume allocation alleged here constitutes a per se violation because it was committed in furtherance of the alleged price-fixing and therefore became inextricably intertwined. Thus, the government concludes that the two actions went hand-in-hand and should be analyzed as a single per se price-fixing violation. The court agrees and the motion to acquit as to sale volume allocation is denied.

The Rule of Reason is generally applied to antitrust violations, *State Oil Co. v. Khan,* 522 U.S. 3, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997), and requires the government to prove that a particular practice (such as price-fixing) places an unreasonable restraint on trade surmised by balancing the positive and negative effects the conduct has on the relevant market. *Copperweld Corp. v. Independence Tube Corp.,* 467 U.S. 752, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). Per se violations are the narrow exception to the general rule, in which the alleged misconduct is so unreasonable that it is presumed to violate the Sherman Act and inquiry into its effect on trade is deemed unnecessary. *Northern Pacific R. Co. v. United States,* 356 U.S. 1, 78 S.Ct. 514, 2 L.Ed.2d 545 (1958). A particular course of conduct is not deemed a per se violation unless the courts have had "considerable experience with that type of *conduct* and application of the rule of reason has inevitably resulted in a finding of anti-competitive effects." *Bunker Ramo Corp.,* 713 F.2d at 1284 *citing ·United States v. Topco Associates, Inc.,* 405 U.S. at 607–608, 92 S.Ct. 1126 (emphasis added). Price-fixing has been deemed a per se violation of the Sherman Act. *Khan v. State Oil Co.,* 93 F.3d 1358 (7th Cir.1996) *vacated and remanded on other grounds,* 522 U.S. 3, 118 S.Ct. 275, 139 L.Ed.2d 199 (1997).

The defendants claim that no court has ever addressed let alone held that sales volume allocation constitutes a per se violation and that since price-fixing and sales volume allocation are two separate and distinct violations, the Rule of Reason must govern sales volume allocation. That conclusion, however, is premised on a flawed interpretation of the indictment and a distorted interpretation of the government's theory of the case. The indictment alleges *one* conspiracy to fix lysine prices in which sales volumes were allocated in furtherance of the price-fixing objective. *See* Indictment ¶¶ 2–4; *see also* Trial Tr. 703 –706. Thus, sales volume allocation merely supplemented the per se price-fixing goal and should be scrutinized under the same per se standard.

Alternatively, the defendants contend that even if sales volume allocation constitut-

ed a per se violation, that this case somehow presents unique circumstances in which the Rule of Reason should be applied. Sometimes per se violations are scrutinized under the Rule of Reason, but only when a strict application of the antitrust laws would impede the very markets that the antitrust laws are intended to protect, or when competing public policy goals cannot harmoniously coexist without some compromise in the application of the Sherman Act.

For instance, in *Broadcast Music, Inc. v. Columbia Broad. Sys., Inc.,* 441 U.S. 1, 19–20, 99 S.Ct. 1551, 60 L.Ed.2d 1 (1978), the Supreme Court held that blanket licensing agreements that set uniform prices are not per se violations since the policy was not solely a "naked restraint on trade" but rather served the dual purpose of protecting the parties' rights under the federal copyright law. The *Columbia Broadcasting* Court reasoned that given the market structure and product involved, price-fixing was the only reliable method of ensuring distributors and music pirates did not infringe on the intellectual property rights of composers and musicians.

Similarly, in *National Collegiate Athletic Ass'n v. Bd. of Regents of the Univ. of Oklahoma,* 468 U.S. 85, 104 S.Ct. 2948, 82 L.Ed.2d 70 (1984), the Supreme Court permitted the NCAA to engage in a horizontal price-fixing/output plan which limited the number of college football games the respective universities could air in a given season. The plan was intended to protect the respective university's from declining attendance due to televised games. That is, absent fan attendance there would be no games thereby mooting television revenues. Apart from these limited instances where price-fixing is a crucial means of ensuring the continued existence of the means of production or the market itself, courts have found no reason to not apply the per se rule to horizontal price-fixing schemes like the one alleged here.

Here, the defendants and their corporate competitors are hard-pressed to convince this court that it had to agree to prices in order to protect the market. To the contrary, the defendants' theory of the case has always been that they are fierce competitors who entered the market to spur competition. Nothing in the record remotely suggests that price-fixing is necessary to protect the lysine market. Nor have the defendants claimed that any supervening law or policy precludes applying the per se rule in this case. Hence, the court shall instruct the jury as to a per se violation theory of conspiring to violate the Sherman Act.

In light of the court's ruling, and viewing the evidence in a light most favorable to the government, the court denies the defendants' motion for acquittal as to the sales volume allocation count. The evidence arguably shows that the defendants set the sales volume allocation in order to facilitate the price-fixing scheme. The jury should, and will, be permitted to draw its own conclusions as to whether the sales volume was in furtherance of the price-fixing scheme. Accordingly, the defendants' motion for acquittal as to the sales volume allocation count is denied.

### 2. *Variance / Constructive Amendment of the Indictment*

Andreas and Wilson allege that they must be acquitted due to a constructive amendment to their indictment, alleging that evidence outside the scope of the indictment has been admitted at trial. They argue that the evidence does not support a three-year conspiracy as alleged in the indictment and that, at best, a conspiracy, if any, lasted from late 1993 until the middle of 1995.

In response, the government argues that the evidence establishes the existence of the alleged conspiracy. Alternatively, the government contends that the defendants waived their challenge to evidence regarding the conspiracy by failing to challenge the government's *Santiago* proffer.[1]

A constructive amendment occurs when the offense proven at trial was not alleged in the indictment, *United States v. Remsza,* 77 F.3d 1039, 1043 (7th Cir.1996), and results from where a complex set of facts

---

1. Prior to commencing the trial, the court entered an Order finding sufficient evidence establishing the existence of the alleged conspiracy consistent with the Seventh Circuit's decision in *United States v. Santiago,* 582 F.2d 1128 (7th Cir.1978).

distinctly different from those alleged in the indictment are presented to the jury, *United States v. Kuna,* 760 F.2d·813, 817 (7th Cir. 1985), or when the facts establish a substantive offense different from that charged in the indictment. *Id.*

 A variance arises when the evidence adduced at trial narrows the scope of the indictment's charges without adding any new offenses. *United States v. Remsza,* 77 F.3d 1039, 1043 (7th Cir.1996). The Seventh Circuit has repeatedly emphasized that "the jury gets the first crack at deciding 'whether there is one conspiracy or several when the possibility of a variance appears.'" *United States v. Wilson,* 134 F.3d 855, 865 (7th Cir.1998); *see also United States v. Magana* 118 F.3d 1173, 1186 *quoting United States v. Percival,* 756 F.2d 600, 609 (7th Cir.1985).

The government has presented taped excerpts of the June 1992 Mexico City meeting at which Wilson himself allegedly discussed the lysine price-fixing. His statements coupled with the testimony of alleged co-conspirators Kanji Mimoto, Alain Cruoy, and Masaru Yamamoto, when viewed in a light most favorable to the government, clearly supports an inference that the defendants engaged in the conspiracy beginning on or about June 1992. Granted, the conversations could reflect legitimate conversations or criminal acts, but that is a factual issue to be resolved by the jury.

Assuming *arguendo* that the evidence produced at trial established that the lysine conspiracy existed for less time than alleged in the indictment, neither of the defendants are entitled to acquittal so long as the ·illegal conduct proven by the government is a subset of criminal activity consistent with the offense charged in the indictment. *See United States v. Wilson,* 134 F.3d at 855, 865 (7th Cir.1998). Nothing in the record remotely suggests that the evidence presented at trial constitutes a variance to the indictment. At best, the evidence indicates that some alleged conspirators joined the alleged conspiracy at different points in time. Likewise, the evidence arguably supports the inference that defendants Andreas and Wilson were attempting to crack what they contend was an Asian lysine cartel. However these theories are wholly argumentative and, when mea-

sured against other evidence in a light most favorable to the government, cannot serve as the basis for acquittal.

### *CONCLUSION*

For the foregoing reasons, the court denies the defendants' motions for judgment of acquittal.