In the

# United States Court of Appeals
## For the Seventh Circuit

No. 01-1958

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ARLYN ACKLEY,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of Wisconsin.
No. 00 CR 48—**Charles N. Clevert**, *Judge.*

ARGUED JANUARY 9, 2002—DECIDED JULY 18, 2002

Before FLAUM, *Chief Judge*, HARLINGTON WOOD, JR., and EASTERBROOK, *Circuit Judges.*

HARLINGTON WOOD, JR., *Circuit Judge.* This case involves a few Native Americans of the Sokagoan Chippewa community near Mole Lake, Wisconsin. The defendant, Arlyn Ackley, was tribal chairman from 1994 to 1997. Ackley appeals his October 2000 conviction on Counts II and III of a three-count indictment which charged theft from a gaming establishment in violation of 18 U.S.C. §§ 1167(b) and 2.[1] The district court granted the defend-

---

[1] On April 5, 2001, Ackley was sentenced to thirty months imprisonment and three years of supervised release on Counts II and
(continued...)

ant's motion for judgment of acquittal on Count I which charged a conspiracy "to obstruct, purloin, willfully misapply and take and carry away with the intent to steal approximately $38,715.69 belonging to Sokagoan Gaming Enterprise, a gaming establishment operated by an Indian tribe pursuant to an ordinance or resolution approved by the National Indian Gaming Commission" in violation of 18 U.S.C. §§ 1167(b), 371, and 2.

## BACKGROUND

The Sokagoan Chippewa Tribal Community ("the tribe") is governed by a tribal council made up of six members elected by the tribe.[2] A tribal chairman is also elected by the tribe. The government describes this position as "similar to that of a governor of a state." The gambling operations permitted to take place on the reservation are overseen by the Sokagoan Gaming Enterprise Corporation ("SGEC"), which was run by a board appointed by the tribal council.

Ackley was elected tribal chairman in 1994 and served for about three years. The facts relating to the charged offenses need only be briefly related. While tribal chairman, Ackley did considerable traveling; approximately once a week he went somewhere. There was testimony that Ackley traveled both on behalf of the tribe and on behalf of the SGEC. The financing of those trips is what is involved in these offenses.

---

[1] (...continued)
III to run concurrently. He was ordered to pay $38,715.69 restitution and a $200 special assessment.

[2] The tribe is a federally recognized Indian Tribal Organization as defined in 18 U.S.C. § 1163, which provides that the term "Indian Tribal Organization" means "any tribe, band, or community of Indians which is subject to the laws in the United States relating to Indian affairs or any corporation, association or group which is organized under such laws."

Tribal financial procedures permitted the tribal chairman to request travel advances prior to traveling. Ackley, as tribal chairman, was issued an SGEC credit card ("the tribal credit card"). The SGEC paid the credit card bills for the tribal credit card issued in Ackley's name. Ackley's secretary, who was also his niece, handled most of his travel arrangements. Prior to a trip, his secretary used the tribal credit card to make Ackley's hotel reservations. She would prepare and submit a travel advance form to the accounting office for Ackley which set out his anticipated spending on hotels and per diem expenses. The tribal comptroller would then issue a check in that amount payable to Ackley. After the completion of travel, Ackley was required under tribal financial procedures to submit his receipts from the trip, set forth his actual expenditures on a portion of the travel advance form designated for reconciliations, and return any unused portion of the advanced funds. Ackley did nothing to meet these requirements. In addition, after receiving travel advances for hotel room costs, Ackley charged those expenses to his tribal credit card. The SGEC, not Ackley, paid these credit card charges. It was an easy way for Ackley to make money on his travels. The evidence showed nineteen trips for which Ackley received a travel advance for hotel expenses and then charged those expenses to his tribal credit card. For those nineteen trips, Ackley was given $14,420 in advance funds for travel expenses, including $8,688 for anticipated hotel expenses. During those trips, Ackley charged $14,817.53 in hotel expenses to his tribal credit card. Counts II and III of the indictment dealt with two of these trips. Count II charged Ackley with knowingly retaining with intent to convert to his own use $1,500 belonging to the SGEC in connection with an October 28, 1995 trip to San Diego, California. Count III charged the knowing retention with intent to convert $1,800 in connection with a May 31, 1996 trip to Tulsa, Oklahoma.

Ackley also used his tribal credit card for personal expenses and to obtain cash advances for gambling at the nearby Menomonie Nation casino, a fact which Ackley admitted to an FBI Special Agent. A member of the tribal council and several SGEC board members testified that there was no agreement allowing Ackley to use the tribal credit card for personal expenses or cash advances. Further, early in his tribal chairmanship, Ackley had been advised in writing of his responsibilities about travel advances, but that advice was ignored which is why we are here.

## THE ISSUES

The first two issues as framed by Ackley in his brief are as follows:

> The District Court committed plain error by constructively amending both charges in Counts Two and Three of the indictment by: (1) instructing the jury on a theory of guilt different than that alleged in the indictment; and (2) by allowing the jury to deliberate the conspiracy charge in Count One together with the substantive charges in Counts Two and Three because the Court deferred deciding Mr. Ackley's motion for judgment of acquittal as to the conspiracy charge until post-verdict, at which time the District Court granted Mr. Ackley's motion and dismissed the conspiracy charge because of insufficient evidence.

Ackley also challenges the sufficiency of the evidence to support his convictions on Counts II and III.

First, it should be noted that Ackley did not object to the jury instructions and, in fact, his attorney affirmatively approved all of the instructions, so any claimed error was waived. *See United States v. Cusimano*, 148 F.3d 824, 828 (7th Cir. 1998). In the absence of an objection in the district

court, we review for plain error, *id.*, and will reverse only when the error "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Olano*, 507 U.S. 725, 732 (1993) (internal quotations and citations omitted). We find no plain error in the instructions. In cases involving constructive amendment of jury instructions as claimed by Ackley, plain error occurs only when the amendment constitutes a mistake so serious that the defendant probably would have been acquitted but for the mistake. *Cusimano*, 148 F.3d at 828. Ackley provides no specific support for his assertion that he would have been acquitted but for the alleged constructive amendment, and given the strength of the evidence against him, he could not. His claim of error fails.

Additionally, the district court did not err in withholding its ruling on Ackley's motion for judgment of acquittal on Count I. Ackley did not request severance of Count I from Counts II and III in the district court. Nor would severance have been appropriate. It was all the same evidence, most of which would have been admissible in any event, and the district court clearly instructed the jury that each count and the evidence relating to it had to be considered separately.

Ackley's challenge to the sufficiency of the evidence requires little attention. Viewed in the light most favorable to the government, the record contains ample evidence from which the jury could find guilt beyond a reasonable doubt. *See United States v. Thomas*, 284 F.3d 746, 751 (7th Cir. 2002). Ackley used legitimate business trips to steal tribal money for his own purpose. It was not a one-time event for him, but was a very reliable pattern Ackley knowingly used each time to enrich himself at tribal expense. It was his own unique method of stealing. It was the same as if he had slipped his hand into the pocket of the tribe's comptroller and slipped out the tribe's wallet.

## **CONCLUSION**

The defendant's allegations of error are all without merit. The record fully sustains the jury's guilty verdict, not just beyond a reasonable doubt, but beyond all doubt. The district court cannot be faulted for its conduct of the trial. The defendant's appellate attorney did all he reasonably could for the defendant in these circumstances.

The district court is affirmed in all respects.

AFFIRMED.

A true Copy:

      Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*