UNITED STATES of America,
Plaintiff–Appellee,

v.

Michael J. WILLIAMS, a/k/a Giavonni
Williams, a/k/a Michael Giavonni
Williams, Defendant–Appellant.

No. 02–4361.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 10, 2003.

Decided March 24, 2004.

Lovita Morris King, Office of the United States Attorney, Fort Wayne, IN, for Plaintiff–Appellee.

Mark D. Stuaan, Barnes & Thornburg, Indianapolis, IN, for Defendant–Appellant.

Before EASTERBROOK, MANION, and KANNE, Circuit Judges.

## ORDER

Michael J. Williams appeals his conviction on two counts for being a felon in possession of a firearm. He stipulated to a predicate felony conviction and was sentenced to 70 months' imprisonment on each count, to run concurrently. He now argues that he was improperly charged and convicted of multiple counts for the same offense; that the evidence was insufficient to support his conviction; and that the evidence and jury instructions resulted in a constructive amendment of his indictment. We affirm.

### I.

On April 23, 2002, Michael Williams, then 24 years old, phoned Daniel Clary at the residence of Clary's girlfriend in Fort Wayne, Indiana. Richard Goodpaster, like

Clary, a juvenile, was also present at the time of the call. All three were friends or acquaintances. Apparently in anticipation of Williams' arrival, Clary and Goodpaster moved a pistol and rifle from one location in the house to the front room.

Williams entered the residence of Clary's girlfriend through the front room and informed Goodpaster and Clary that he was upset with someone and wanted to scare him. As Williams soon disclosed, the person causing his angst was a man called "Buck." Williams claimed that Buck was angry because Buck thought Williams was sleeping with Buck's girlfriend. In light of Buck's anger, Williams vowed to do whatever he had to do to protect himself.

Williams then returned to his car, a maroon Cadillac sedan. Goodpaster and Clary each took a gun and joined Williams. Once in the car, Clary gave Williams the pistol and Goodpaster gave Clary the rifle. The three then drove off to find Buck. Williams was driving, Clary was in the front passenger seat, and Goodpaster was in the back.

Before leaving the house, Goodpaster recalled that Williams stated he was going to shoot the person harassing him. While in the car, Goodpaster heard Williams talking on his cell phone and telling Buck that he was going to shoot him. Shortly thereafter, apparently thinking he spotted a car driven by Buck, Williams stopped the car that was actually occupied by Darron Dean, his wife and six-month-old daughter. According to the Deans, Clary had a rifle sticking out the front window, pointed at the Deans' car. Williams then got out of the car with a hand behind his back, and approached Darron Dean on the driver's side. Williams then realized that Dean was not Buck, but instead a casual acquaintance of Williams. After recognizing that he had the wrong man, Williams got back in his car and drove off. Darron

Dean later testified that as the cars passed driver-window to driver-window, he saw a gun in Williams' hand and that Williams put the gun down on the armrest.

After this brush with danger, the Deans drove to their house and immediately called 911. The 911 tape reveals the voice of Darron Dean in the background stating that Williams had a gun, and Dean's wife stating that the passenger had a rifle. During the 911 call, Williams actually came to the Deans' house and apologized for the mixup. After he left, the police spotted the Cadillac and apprehended the trio after a high-speed chase and minor crash.

Williams was then indicted on two counts of being a felon in possession of a firearm, pursuant to 18 U.S.C. § 922(g)(1). At Williams' trial, Goodpaster testified about Williams' statement at the house that he was going to kill or shoot the person with whom he was having problems, and about the phone call while in the car telling Buck that he was going to shoot him. Goodpaster finally claimed that he saw both Williams and Clary point the guns at the Dean car. As stated, Mr. Dean testified to seeing the gun in Williams' hand. Williams did not testify, but during a police interview denied touching the guns.

To establish the interstate nexus element for the offenses, the government presented the testimony of Alcohol, Tobacco, and Firearms (ATF) Agent John Phinney, a firearms expert. Phinney concluded that the pistol used by Williams was manufactured in Connecticut, and thus had to travel in interstate commerce before arriving in Indiana. Likewise, Phinney testified that the rifle in question was manufactured in Germany and had to travel in interstate and foreign commerce before arriving in Indiana.

The jury found Williams guilty on both counts. Williams then stipulated to his prior felony conviction and was sentenced to 70 months' imprisonment on each count, to run concurrently. In addition, the district court ordered Williams to pay a mandatory Special Assessment of $100 on each count. This appeal followed.

## II.

Williams first argues that the indictment charged him with two separate counts for the same crime—multiplicity. He claims that the evidence on the two guns (in the light most favorable to the government) shows nothing more than that he possessed the guns at the same time and place.

Multiplicity is the charging of a single offense in separate counts of an indictment. See United States v. Conley, 291 F.3d 464, 469–70, n. 4 (7th Cir.2002). Multiplicity challenges are determined by "whether each count [of the indictment] requires proof of a fact which the other does not." Id. at 470. If a defendant's possession of multiple firearms is "simultaneous and undifferentiated," the government may only charge him with one firearm violation. See United States v. Buchmeier, 255 F.3d 415, 422 (7th Cir. 2001).

■ Williams failed to raise the multiplicity issue before trial. The failure to raise the multiplicity challenge in a timely manner before trial constitutes forfeiture of the issue and forfeited issues are reviewed for plain error. See, e.g., United States v. Jacques, 345 F.3d 960, 962–63 (7th Cir.2003). Thus, Williams must es-

tablish plain error that affected his substantial rights and the fairness, integrity or public reputation of the judicial proceedings. See United States v. Bursey, 85 F.3d 293, 296 (7th Cir.1996) (quoting United States v. Penny, 60 F.3d 1257, 1264 (7th Cir.1995)).

■ The government maintains that, because Williams actually possessed the pistol in his hand, but only constructively possessed the rifle (through Clary), his possession of the respective weapons was sufficiently "differentiated" so as to allow for the two charges without violating multiplicity. Cf. Buckmeier, 255 F.3d at 422. We express no opinion on this argument and need not reach the question of whether the indictment on two counts constitutes plain error, because, as explained below, assuming that the court committed plain error, the error is nonetheless harmless.

At oral argument, Williams concedes that his appeal merely turns on a $100 mandatory Special Assessment. As stated above, the district court ordered Williams to pay a $100 Special Assessment on each count. Williams does not claim that the number of firearms possessed or the counts charged—one or two—has any impact on his Guideline calculation under U.S. Sentencing Guidelines Manual § 2K2.1.[1] The district judge did not differentiate between the two counts for sentencing purposes, because he sentenced Williams to a concurrent 70–month sentence on each count. Accordingly, any error is harmless because one weapon charge, as opposed to two, would have no material impact on Williams' sentence, which was identical on

---

1. Instead, the Guidelines provide for an enhancement for three or more firearms. See U.S.S.G 2K2.1(b)(1). Apparently, Williams received a two-level enhancement for obstruction of justice—specifically, reckless endangerment relating to the police chase. The num-

ber of counts charged or weapons possessed has no impact on this enhancement. His guideline range was 63 to 78 months on each count. Likewise, whether Williams was charged with one or two counts has no impact on his sentencing range.

both counts. *See, e.g., United States v. Arrous,* 320 F.3d 355, 361 (2d Cir.2003).

■ The extra Special Assessment in the amount of $100 does not change our conclusion. At the outset, we have no reason to believe that Williams has actually paid the Special Assessment, which was due immediately. The district court found that Williams was unable to pay a fine because of his financial condition and his attorney is uncertain if he has paid the Special Assessment. In any event, even if Williams has paid the extra $100 or if he will be forced to pay it in the future, this amount is not material such that it rises to the level of affecting his substantial rights and the fairness, integrity or public reputation of his trial.

■ Moreover, even if forcing Williams to pay the extra $100 constitutes plain error, "we have the power to correct the error but are not required to do so." *Conley,* 291 F.3d at 470 (citing *United States v. Cusimano,* 148 F.3d 824, 828 (7th Cir. 1998)). We are convinced that remand in this case would result in a needless waste of time and resources. Accordingly, we decline to remand on multiplicity grounds.

The remaining two issues addressed in Williams' brief are insubstantial. He first challenges the sufficiency of the evidence to support his conviction. We must affirm the convictions "[i]f any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Buggs,* 904 F.2d 1070, 1074 (7th Cir.1990) (citations omitted). We must consider the evidence in the light most favorable to the government and defer to the jury's assessment of credibility. *See United States v. Rivera,* 273 F.3d 751, 755 (7th Cir.2001).

■ Specifically, Williams claims that ATF agent Phinney was improperly called as an expert witness and thus should have

been prohibited from rendering an opinion as to whether the firearms traveled in or affected interstate commerce. Again, Williams concedes plain error review because he did not object to Phinney's expert opinions at or before trial. An expert need only be qualified by "knowledge, skill, training, or education." Fed.R.Evid. 702. The record reveals that Phinney worked five years for ATF investigating firearms and arson law, and attended ATF's 40-hour Interstate Nexus School regarding the manufacture, importation, and selling of firearms. In addition, Phinney has military training on identifying firearms and previously testified four times regarding the interstate nexus requirement. These facts are sufficient to support the district court's conclusion that Phinney was qualified to offer an opinion concerning the firearms' interstate nexus. Accordingly, construed in the light most favorable to the government, there is sufficient evidence on the interstate nexus element to support the jury's finding.

■ Williams next argues that there was insufficient evidence concerning both actual and constructive possession of the firearms. Williams claims that Mr. Dean did not see Williams with a gun on April 23. However, Dean testified that he saw Williams place the gun on the armrest. In addition, Goodpaster testified that Williams actually possessed the pistol and that Williams was present when both guns were carried from the residence to the car. Further, Goodpaster testified to Williams' statements that he desired to shoot a man. The jury was free to believe this testimony that Williams actually possessed the pistol. Moreover, the above evidence is adequate for the jury to find constructive possession, *i.e.,* that Williams knowingly had the power and intention to exercise dominion and control over the rifle, either directly or through others. *See United States v.*

*Walls,* 225 F.3d 858, 864 (7th Cir.2000). The jury could reasonably determine that Williams knew about the guns, expressed the purpose to kill or shoot Buck during the trip, and drove his car in search of Buck–all the time having the authority to control the rifle through the juveniles who joined him.

■ Finally, Williams seizes upon the indictment language "in or affecting commerce" and claims that the evidence and jury instructions constructively amended the indictment or "fatally varied" from the indictment by referring to interstate and/or foreign commerce. According to Williams, the indictment permitted him to be convicted by mere proof that the weapons traveled in intrastate commerce, as opposed to in foreign or interstate commerce.

A constructive amendment to an indictment occurs when the government and/or the court broadens the possible bases for conviction beyond those presented in the indictment. *See United States v. Cusimano,* 148 F.3d 824, 829 (7th Cir.1998). A variance occurs when the terms of the indictment are unaltered, but the evidence at trial proves facts materially different from those alleged in the indictment. *See United States v. Mosley,* 786 F.2d 1330, 1335 (7th Cir.1986).

■ Again, Williams concedes plain error review. We have held that an indictment charging a prohibited person with possession of a weapon need not describe the specifics of how the weapon traveled in interstate commerce or state anything more than that the weapon traveled in commerce. *See United States v. McCarty,* 862 F.2d 143, 145 (7th Cir.1988). This is particularly true here because the judge instructed the jury that the firearms must travel in interstate or foreign commerce, explaining those elements, and a jury is presumed to follow the court's instructions. *See, e.g., Cusimano,* 148 F.3d at 829. The court did not commit plain error in permitting the indictment language to stand and by instructing the jury more specifically of the required interstate or foreign elements of the charges.

### III.

Any multiplicity error by the district court in permitting Williams to be charged with two counts of weapon possession is harmless because remand would have no material impact on his sentence. Sufficient evidence was presented for a rational jury to conclude that the government proved the interstate or foreign nexus on the firearms charges. In addition, a rational jury could have found that Williams actually or constructively possessed the firearms. Finally, the court did not commit plain error in permitting the indictment language to stand and by instructing the jury more specifically of the required interstate or foreign elements of the charges. We therefore AFFIRM the district court.